OPINION OF THE COURT
Gerard D’Emilio, J.
In this action for first-party benefits brought on a no-fault endorsement, the defendant insurer seeks vacatur of both its default in responding to the plaintiff’s motion for summary judgment and of the award of summary judgment as to liability and the basic amounts due pursuant to a court order dated March 18, 1991, and denial of the motion for summary judgment. It also seeks to reargue its motion for a protective order.
A default judgment may be vacated upon written stipulation of the parties or their attorneys (see, CPLR 5015 [b]). The affidavit of defense counsel dated March 25, 1991, together with the April 1, 1991 affirmation by plaintiff’s counsel, constitute such a stipulation. Consequently, that portion of the instant motion is granted in which the defendant insurer seeks to vacate the award of summary judgment to the plaintiff on March 18, 1991.
To prevail on a motion for summary judgment, the plaintiff must establish his claim "sufficiently to warrant the court * * * in directing judgment” in his favor (CPLR 3212 [b]). He can only satisfy this requirement by making "a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact” (Alvarez v Prospect Hosp., 68 NY2d 320, 324). Once the plaintiff has demonstrated that summary judgment in his favor is warranted, the defendant can defeat the motion by demonstrating the existence of facts requiring trial (see, Rotuba Extruders v Ceppos, 46 NY2d 223, 231). This demonstration, like that required from the proponent of the motion, must usually be made through evidentiary proof in admissible form, although "[t]he rule with respect to defeating a motion for summary judgment * * * is more flexible, for the opposing party * * * may be permitted to demonstrate acceptable excuse for his failure to meet the strict requirement of tender in admissible form” (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1068). Despite the somewhat more flexible standard for defeating a summary judgment application, "mere conclusions, expressions of hope *223 or unsubstantiated allegations or assertions” will be insufficient to defeat a motion (Zuckerman v City of New York, 49 NY2d 557, 562). However, even if a defendant’s allegations are insufficient of themselves to defeat a plaintiff’s motion, because the motion searches the record (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:23, at 443) it will be denied, or a hearing ordered, if the record reflects that factual issues requiring trial exist.
With respect to liability, no issues of fact exist. The plaintiff, who is the provider of the services concerning which first-party benefits are sought, verified the complaint himself. Because his allegations are based on his firsthand knowledge, this pleading may be treated as an affidavit for purposes of CPLR 3212 (b) (see, CPLR 105 [t]). Both the answering pleading and the defense affidavit in opposition to the motion were made by defense counsel, an individual lacking firsthand knowledge of the facts, and so these documents are without sufficient force to raise any issues of fact. Indeed, the only issue concerning liability is one of law, whether the examination for which the plaintiff billed the defendant, designated the electromyography examination, qualifies as a first-party benefit under Insurance Law § 5102 (b) that the defendant insurer must pay. Most of the first 15 causes of action cover a series of three tests run on each of 15 different patients seen by the plaintiff and insured by the defendant. The defendant denied most of the claims in their entirety, but made partial payment on the eighth, ninth, tenth, eleventh, and fifteenth claims. The sixteenth claim, actually an item of damage and as such part of the other claims, is for attorney’s fees. With respect to the eighth cause of action, six tests were run.
First-party benefits are reimbursements for basic economic loss (Insurance Law § 5102 [b]). Basic economic loss encompasses necessary expenses for, inter alla, medical services, physical rehabilitation, and any other professional health services (Insurance Law § 5102 [a] [1]). The charges for these expenses are set out in schedules prepared by the chairman of the Workers’ Compensation Board as adjusted by the Superintendent of the Insurance Department (see, Insurance Law § 5108). One adjustment made by the Superintendent is for health services not set out in the schedules. When a charge for a reimbursable service has not been scheduled by the Superintendent, although a fee schedule has been set for the profession of the provider, "then the provider shall establish a fee or unit value consistent with other fees or unit values for compa *224 rabie procedures shown in such schedule, subject to review by the insurer” (11 NYCRR 68.6 [a]). The scope of the insurer’s review is, presumably, the same as that for unscheduled providers, "review * * * for consistency with charges permissible for similar procedures under schedules already adopted or established by the superintendent” (11 NYCRR 68.6 [b]). The use of electrical devices is recognized in New York as an acceptable part of chiropractic treatment, provided the Federal Food and Drug Administration has not disapproved of the device (see, Education Law § 6551 [3]; 8 NYCRR 73.3).
The Superintendent has provided a fee schedule for chiropractors in Appendix 17-A, part C of the insurance regulations (see, 11 NYCRR Appendix 17-A). Chiropractic treatment through electrical devices is an element of basic economic loss reimbursable as a first-party benefit under Insurance Law § 5102 (a), (b), but the Superintendent has not provided for this service in the chiropractic fee schedule. The court observes here that while part of the schedule, covering office and home visits, concludes with the statement that "Fees for items listed above include any and all chiropractic treatment and modalities”, this language has been taken directly from the primary source of the fee schedule, the fees established by the chairman of the Workers’ Compensation Board (see, 12 NYCRR Appendix C-5). The insurance regulation promulgated as 11 NYCRR 68.6 (a), quoted earlier, represents the adjustment to the schedule by the Superintendent of Insurance authorized under Insurance Law § 5108 (b) and is controlling.
As noted, the defendant has failed to raise any factual issue regarding its liability for the electromyography examinations. With respect to damages, however, upon reexamination of the papers the court finds questions do exist about whether the fees charged were "consistent with other fees or unit values for comparable procedures shown in [the chiropractic fee] schedule” (11 NYCRR 68.6 [a]). Consequently, the scope of the inquest to be held in this action is expanded from the amount of attorney’s fees to include the propriety of the fee charged for each of the examinations.
To the extent the defendant also seeks to reargue that portion of the March 18 order of the since retired Judge Mitchell in which the application for a protective order was denied, reargument is granted. The primary reason for the denial was that the issue had become moot by the grant of summary judgment for the plaintiff, who had made the demand. The court is of the opinion that the mootness was due *225 to the fact that the issues to be probed through the demanded discovery all went to liability, and the liability question having been determined in the plaintiff’s favor, discovery was no longer necessary. This court agrees. Since liability has been determined, the discovery sought is no longer necessary. This court also believes, however, that the motion for a protective order was untimely because it was made more than 15 days after service of the demand, as the defendant concedes (see, CPLR 3122, 2103 [b] [2]). Had the motion for summary judgment been denied on the liability question, disclosure would have been required since the demand was not palpably improper.