Mario INTRONA, D.C., and Chiro Med Health Services, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

No. 93–CV–2870 (JRB).

United States District Court, E.D. New York.

Dec. 27, 1993.

Paschal A. Corbo, Staten Island, NY, for plaintiffs.

Kevin Burke, Cahill Gordon & Reindel, New York City, for defendant.

*MEMORANDUM–DECISION AND ORDER*

BARTELS, District Judge.

The plaintiffs and the defendant Allstate Insurance Company ("Allstate") cross-move under Rule 56 of the Federal Rules of Civil Procedure for summary judgment. Allstate's motion seeks dismissal of 29 causes of action, all of which seek reimbursement for medical services provided by plaintiff Mario Introna, D.C. ("Dr. Introna"), a licensed chiropractor, to patients covered by New York State's Comprehensive Motor Vehicle Insurance Reparations Act, Insurance Law §§ 5101, *et seq.*, and the regulations promulgated thereunder (collectively the "No–Fault Law").

This case requires interpretation of the state statutory and regulatory scheme governing the fees health providers may charge for medical services provided to patients receiving treatment under New York's No–Fault Law. Dr. Introna and co-plaintiff Chiro Med Health Services (Dr. Introna's billing service) sue to recover from Allstate the full amount of certain fees Dr. Introna charged his no-fault patients for various chiropractic treatments and diagnostic procedures. Each of the patients upon which Dr. Introna performed the services at issue was covered by a New York State No–Fault insurance policy issued by the defendant Allstate. Neither the plaintiffs nor Allstate dispute application of New York's No–Fault Law to this action. For the reasons set forth below, the defendant's motion for summary judgment is granted in part and denied in part, and the plaintiffs' cross-motion likewise is granted in part and denied in part.

*STATUTORY FRAMEWORK*

New York's No–Fault Law provides coverage for "basic economic loss" sustained in connection with injuries resulting from the use or operation of a motor vehicle in New York State. N.Y. Insurance Law, § 5102 (McKinney's 1985 & Supp.1993). To reduce and control costs charged for medical services provided to no-fault patients, the state legislature set limits on the fees physicians are permitted to charge by incorporating into

the no-fault scheme the fee schedules established by the Workers' Compensation Board for industrial accidents. Insurance Law § 5108(a). These schedules determine exclusively the fees health providers may charge patients treated under the No–Fault Law. *See* Insurance Law § 5108(c); *Roth v. Amica Mutual Ins. Co.* 135 Misc.2d 130, 514 N.Y.S.2d 864 (Dist.Ct. Suffolk Co.1987) (health providers are limited to the payments authorized by Insurance Law §§ 5108[a] and [b] when providing services to no-fault patients).

State regulations, codified at 11 N.Y.C.R.R. Part 68, further define and implement the above-mentioned statutory provisions, and establish, among other things, a detailed chiropractic fee schedule (Appendix 17–A, Part C) that sets maximum permissible charges for chiropractic services used to treat no-fault patients. The chiropractic fee schedule sets appropriate charges for office and home visits, examinations, emergency treatments, and various chiropractic radiology treatments. The regulations expressly include in the fee for office and home visits charges for "any and all chiropractic treatment and modalities" performed during the visit. *See* Appendix 17–A, Part C.

Physicians are prohibited "from demanding or requesting any payment for services in excess of" the charges permitted under the regulations. 11 N.Y.C.R.R. § 68.0(f). *See also* Insurance Law § 5108(c) ("[n]o provider of health services ... may demand or request any payment in addition to the charges authorized" by the applicable fee schedule). However, fees in excess of those listed in the schedule may be warranted in limited circumstances. For example, 11 N.Y.C.R.R. § 68.5 authorizes an additional fee over that set forth in the schedule if an "unusual procedure or unique circumstance justifies the necessity for such charge." *Accord* Insurance Law § 5108(a) (charges for medical services performed may exceed those set forth in the schedule "where the insurer or arbitrator determines that unusual procedures or unique circumstances justify the excess charge").

Moreover, the regulations establish a method by which a health provider can determine additional charges for such "unscheduled" services. If a schedule applicable to the provider has been adopted, the provider must use a "comparable procedure" method of establishing rates for the unscheduled services, setting fees "consistent with other fees or unit values for comparable procedures shown in such schedule." 11 N.Y.C.R.R. § 68.6(a). In contrast, where no fee schedule applicable to the provider has been adopted, the provider determines "the permissible charge for such service [by adopting] the prevailing fee in the geographic location of the provider." 11 N.Y.C.R.R. § 68.6(b).

## BACKGROUND

Dr. Introna, as subrogee, submitted claims for reimbursement under 28 different New York State No–Fault insurance policies issued by Allstate, seeking a total of over $82,000 in compensation. (*See* Stipulation and Order, dated September 9, 1993 [the "Stipulation and Order"], attached as Exhibit A to Plaintiffs' Memorandum of Law, ¶ 7.) Allstate paid the sum of $32,150.41 to plaintiffs in satisfaction of 29 of the claims submitted under the various policies. (*Id.* at ¶ 8.) Allstate denied coverage for the remainder of the claims, asserting that Dr. Introna wrongfully charged fees for various services—including unclassified diagnostic procedures, hot/cold packs, muscular stimulation, spinal manipulation, intersegmental traction, attended modality, muscle testing, range of motion, and plethysmography treatments—in excess of those permitted under the No–Fault Law.

The plaintiffs instituted this action, seeking a total of $50,079.29 in damages, with costs, interest, and attorneys' fees as provided in the No–Fault Law. The plaintiffs do not dispute that Dr. Introna charged his no-fault patients fees in excess of the office visit charges set forth in the No–Fault chiropractic fee schedule. Rather, they contend simply that Dr. Introna performed services during office visits that are exclusive of the permissible office visit fee. The plaintiffs assert that because the specific services at issue fall without the statutory definition of "treatments and modalities," the law entitles

them to collect additional fees for services performed during office visits.

Both parties cross-move for summary judgment. Allstate urges that under the clear terms of the No–Fault Law, the services at issue constitute customary "treatment and modalities" and thus are covered by previously reimbursed office visit fees.[1] Allstate contends that even if the plaintiffs do have a statutory right to additional compensation for what the plaintiffs apparently allege constitute "unique" or "unusual" procedures, the No–Fault Law unambiguously requires the plaintiffs to determine the appropriate fees for such services by the "comparable procedure" rule and not the "prevailing rate" method. The plaintiffs counter that as a matter of law the treatments at issue constitute unscheduled procedures justifying fees in excess of those charged for office visits, and that because no comparable procedures exist, Dr. Introna must determine his fees by the prevailing rates charged in his geographic location.

### DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper where the record demonstrates clearly that "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 571–73 (2d Cir.1991). The court's function on such a motion is to "assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991).

Where, as here, both parties move for summary judgment in their favor, the "court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993). Rather, when presented with cross-motions filed under FRCP 56, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Board of Educ. of Olean*, 667 F.2d 305, 314 (2d Cir. 1981). *Accord Heublein*, 996 F.2d at 1461.

As a general matter, the party seeking summary disposition "bears the initial burden of informing the court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,'" that demonstrate collectively the absence of any genuine issue of material fact. *Smythe v. American Red Cross Blood Servs.*, 797 F.Supp. 147, 151 (N.D.N.Y.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 [1986] ). Once the movant has satisfied his threshold showing, it is incumbent upon the non-moving party to demonstrate the existence of the essential elements of his case upon which he bears the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Failure of proof on an essential element renders immaterial all other facts, and entitles the movant to judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552.

Cases that contain no relevant factual disputes and raise only questions of statutory construction "present legal issues that may be resolved by summary judgment." *Heublein*, 996 F.2d at 1461 (citing *Oklahoma ex rel. Dep't of Human Servs. v. Weinberger*, 741 F.2d 290, 291 [10th Cir.1983] ). *See also New York City Health and Hospitals v. Perales*, 954 F.2d 854, 861 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992). Summary judgment generally is appropriate where "the parties both assert that the material facts in th[e] case are undisputed and ... the only issue to be resolved is their meaning." *Jennings v. New York State Office of Mental Health*, 786 F.Supp. 376, 380 (S.D.N.Y.), *aff'd*, 977 F.2d 731 (2d Cir.1992).

### A. Additional Compensation for Unscheduled Procedures

■ To resolve the question of whether the No–Fault Law directs that charges for

---

1. The parties agree that Allstate fully reimbursed the plaintiffs for all office visit fees in accordance with those set forth in the chiropractic fee schedule.

the unclassified diagnostic procedures, hot/cold packs, muscular stimulation, spinal manipulation, intersegmental traction, attended modality, muscle testing, range of motion, and plethysmography treatments performed by Dr. Introna are included in the fee scheduled for office visits, the Court must determine whether the subject services fall within the statutory definition of "treatment and modalities."

The parties do not dispute the basic facts underlying this controversy, and indeed agree that for purposes of this action Dr. Introna provided certain necessary chiropractic treatments that are reimbursable under the no-fault insurance policies issued by Allstate. (*See* Stipulation and Order, ¶ 10.) Rather, the parties disagree as to the appropriate statutory classification of the services listed above. Thus, the threshold issue facing the Court on these cross-motions—whether the regulatory fee for office visits encompasses the services performed here—presents the Court with a question of statutory interpretation, and thus a question of law properly decided on motion for summary judgment. *Heublein*, 996 F.2d at 1461; *New York City Health and Hospitals*, 954 F.2d at 861; *Jennings*, 786 F.Supp. at 380.

In considering individually Allstate's motion and the plaintiffs' cross-motion for summary judgment, the Court finds inescapable the conclusion that the bulk of the procedures for which the plaintiffs seek additional recovery are, as a matter of law, "normal and customary procedures and treatments offered by chiropractors and are, therefore, deemed included under the charges set forth in the Chiropractic Fee Schedule for Office Visits." *Tucciarone v. Progressive Ins. Co.*, No. 91-1981, November 19, 1992, pp. 6–7 (Sup.Ct. Schenectady Co.1992). The Court reaches this determination only after giving careful consideration to the evidence submitted by the parties and bearing in mind the purposes underlying the No–Fault Law and the clear language of the statute.

For instance, the law is clear that fees for intersegmental traction treatments and spinal manipulation, two of the services at issue here, are included within the scheduled fee for office visits. *See Tucciarone, supra* at p.

6. Moreover, this Court need not examine evidence concerning industry norms and common practice to determine that application of hot/cold packs, simple range of motion exercises and/or tests, muscle tests, and "attended modality" treatments are neither "unusual" nor "unique" chiropractic services.

The only reasonable inference that can be drawn from the evidence presently before the Court is that the services listed above lie squarely within the range of normal and customary "treatments and modalities" contemplated by the No–Fault fee schedule. The routine nature of these treatments and the frequency with which Dr. Introna performed them fall far short of demonstrating "unique circumstances" justifying charges in excess of those previously reimbursed for office visits. To hold otherwise would permit separate billing for nearly every individual chiropractic treatment performed by Dr. Introna during an office visit. Such a result would subvert legislative intent and undermine the policy of reducing and controlling the costs associated with providing medical and health services to patients treated under the No–Fault Law.

■ Conversely, the Court holds that a number of other services at issue as a matter of law are sufficiently unusual to justify charges in excess of the office visit fee set forth in the chiropractic schedule. The services warranting additional fees here include the various unspecified diagnostic procedures and the plethysmography (which also is diagnostic in nature). *See Tucciarone, supra,* at p. 6 (a "diagnostic testing vehicle rather than a routine treatment" generally will constitute a "non-scheduled fee generating procedure"); *Studin v. Allstate Ins. Co.*, 152 Misc.2d 221, 575 N.Y.S.2d 1001 (Dist.Ct. Suffolk Co.1991) (holding that an electromyography examination, a diagnostic procedure, properly was billed separately under Section 68.6[a] ). Thus, the Court holds that Allstate must compensate Dr. Introna for those additional fees associated only with the performance of these two categories of services.

### B. Comparable Procedure v. Prevailing Fee

■ The correct method by which to measure the additional fees to which the plain-

tiffs are entitled implicates only the application of clear, unambiguous statutory language, and therefore can be disposed of summarily. *See Heublein*, 996 F.2d at 1461; *New York City Health and Hospitals*, 954 F.2d at 861. Although Dr. Introna asserts a right to charge the fee prevailing in his geographic location, under 11 N.Y.C.R.R. § 68.-6(b), a health provider determines the appropriate charge for an unscheduled service by this method *only* where there has been *no* fee schedule adopted that applies to the provider. The plaintiffs cannot conceivably argue that there is no schedule limiting permissible fees charged by chiropractors when the chiropractic schedule is the subject of this litigation. Because the Workers' Compensation Board undeniably has established a fee schedule setting limits on permissible fees charged by chiropractors, Dr. Introna is bound by 11 N.Y.C.R.R. § 68.6(a), and must set his fees in accordance with those charged for comparable procedures.

### C. *Propriety of Plaintiffs' Additional Fees*

 Whether Dr. Introna charged his no-fault patients fees consistent with those charged for comparable procedures raises a question of fact that must be resolved at trial. *Studin*, 152 Misc.2d 221, 575 N.Y.S.2d 1001 (holding that fact issue remained concerning whether fees charged were consistent with those charged for comparable procedures). The defendant has not challenged the particular rates charged by Dr. Introna with any specificity, and the plaintiffs have offered no evidence in support of their contention that no comparable procedures exist. Thus, resolution of this issue necessitates further inquiry and the introduction of evidence demonstrating whether Dr. Introna charged his patients fees consistent with the usual charges for comparable services.

### CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment hereby is GRANTED in part and DENIED in part as herein specified, and the plaintiffs' cross-motion for summary judgment hereby is GRANTED in part and DENIED in part as herein specified:

1. The plaintiffs are granted summary judgment on their claim that the defendant Allstate must compensate Dr. Introna for additional fees charged his no-fault patients for the performance of plethysmography and various diagnostic procedures;

2. Summary judgment is awarded to the defendant Allstate on its claim that the balance of services at issue here constitute "treatments and modalities" under New York's No–Fault Law, and thus charges for such services are included in previously reimbursed fees for office visits;

3. The plaintiffs' cross-motion is denied insofar as the Court holds that Dr. Introna must determine the additional fees to which he is entitled by means of the "comparable procedure" method outlined in 11 N.Y.C.R.R. § 68.6(a); and

4. A triable issue of fact remains concerning whether the fees Dr. Introna charged his no-fault patients were consistent with those charged for comparable procedures.

SO ORDERED.