**Mario INTRONA, D.C., and Chiro Med Health Services, Plaintiffs,**

**v.**

**ALLSTATE INSURANCE COMPANY, Defendant.**

**No. 93–CV–2870 (JRB).**

United States District Court,
E.D. New York.

April 3, 1995.

Paschal A. Corbo, Staten Island, NY, for plaintiffs.

Kevin J. Burke, Cahill Gordon & Reindel, New York City, for defendant.

*MEMORANDUM–DECISION
AND ORDER*

BARTELS, District Judge.

Plaintiffs bring this action pursuant to New York State's Comprehensive Motor Vehicle Insurance Reparations Act, Insurance Law § 5101, *et seq.* (McKinney's 1985 & Supp.1995), and the regulations promulgated thereunder (collectively the "No–Fault Law"). Plaintiff Mario Introna, D.C. ("Dr. Introna"), a licensed chiropractor, seeks to recover from defendant Allstate Insurance Company ("Allstate") the cost of certain medical services he provided to patients covered by no-fault insurance policies issued by defendant. Plaintiffs also seek costs, interest, and attorney's fees under Insurance Law § 5106(a).

### I. *Background and Contentions of Parties*

Dr. Introna, as subrogee, submitted claims for reimbursement under a number of New York State no-fault insurance policies issued by Allstate. Allstate paid a portion of the claims but denied coverage on the remainder, asserting that Dr. Introna had charged fees in excess of those permitted under the No–Fault Law.

Plaintiffs instituted the present action in the Civil Court of the City of New York, County of Richmond, seeking to recover the outstanding balance. Defendant removed the action to this Court on June 28, 1993. Both parties then cross-moved for summary judgment. In their motion papers, plaintiffs did not dispute that Dr. Introna charged his no-fault patients fees in excess of the office visit fees permitted under the No–Fault Law, but argued that he was entitled to collect additional compensation for certain services performed during those visits. Dr. Introna also argued that he was justified in basing his fees on rates prevalent in his geographic area. Allstate disputed plaintiffs' right to the additional charges, and argued that even if Dr. Introna were entitled to additional compensation, the No–Fault Law expressly requires him to base his fees on those charged for comparable medical procedures.

In *Introna v. Allstate Ins. Co.*, 850 F.Supp. 161 (E.D.N.Y.1993), this Court awarded Dr.

Introna an unidentified sum as additional compensation for the performance of certain diagnostic procedures, but held that the balance of services at issue were not separately compensable. Plaintiffs' request to determine additional fees on the basis of the prevailing rate was denied, and the Court ordered a trial on the issue of whether Dr. Introna charged his no-fault patients fees consistent with those charged for comparable procedures.

The Court held a bench trial of this matter on May 23 and 24, 1994. At trial, plaintiffs reiterated what they alleged to be a complete absence of medical procedures with which to compare those performed by Dr. Introna and the resultant need to base his additional fees on the prevailing rate. Plaintiffs then presented expert testimony, most of which was provided by Dr. Introna himself, concerning the amount of fees to which he is entitled. Defendant contended that the comparable procedure method was the only means statutorily available to plaintiffs, and presented a comprehensive methodology by which to determine procedures comparable to those performed by Dr. Introna.

According to plaintiffs, there remain five procedures for which the appropriate fee still must be determined. These include: Computerized Cervical Range of Motion tests; Autoscreen 3–D (or Metrecom) studies; Surface Electromyography ("Surface EMG"); Neurometer Screen Testing; and Plethysmography. Defendant generally agrees with plaintiffs' assessment, but argues that because Computerized Cervical Range of Motion tests fall within the ambit of the Court's prior ruling, the fees for this procedure are subsumed in already reimbursed office visit fees. Under Federal Rule of Civil Procedure 52, the Court reaches the following findings of fact and conclusions of law.

II. *Findings of Fact*

1. Plaintiff Dr. Introna, a licensed chiropractor authorized to practice within the State of New York, is a New York State resident who maintains his principal place of business in Staten Island, New York.

2. Plaintiff Chiro Med Health Services is an unincorporated business entity wholly owned by Dr. Introna which acts as Dr. Introna's billing service and maintains its principal place of business in Staten Island, New York.

3. Defendant Allstate is a corporation incorporated under the laws of the State of Illinois which maintains its principal place of business in Illinois.

4. The amount in controversy exceeds $50,000.

5. Dr. Introna submitted to Allstate claims totalling over $82,000 seeking reimbursement for chiropractic services provided to approximately 29 different patients, all of whom were involved in automobile accidents and whose injuries were subject to no-fault insurance policies issued by defendant.

6. Dr. Introna provided all of the services at issue between April 1990 and February 1993.

7. Allstate fully reimbursed plaintiffs for all office visit fees, and paid plaintiffs a total of over $32,000 in satisfaction of their claims.

8. Allstate denied coverage on certain services Dr. Introna performed during office visits, including Computerized Cervical Range of Motion tests, Autoscreen 3–D studies, Surface EMG, Neurometer Screen Testing, and Plethysmography.

*Statutory Framework*

9. To contain the cost of providing medical services to patients treated under New York's No–Fault Law, the state legislature set limits on the fees health care providers may charge patients who sustain injuries in the use or operation of a motor vehicle. *See* Insurance Law §§ 5102, 5108. The legislature controlled costs by incorporating into the no-fault scheme the fee schedules established by the Workers' Compensation Board for industrial accidents. Insurance Law § 5108(a).

10. Published fee schedules now establish maximum permissible charges for chiropractic services used to treat no-fault patients. *See* 11 N.Y.C.R.R. § 68, Appendix 17–A, Part C; 11 N.Y.C.R.R. § 68, Appendix 17–C, Part L; 12 N.Y.C.R.R. § 348, Appendix C–5.

11. At the time relevant to this action, the Workers' Compensation Board fee schedules were divided into various sections, including Medicine, Physical Therapy, Anesthesia, Surgery, Radiology, and Pathology in the medical fee schedule, and Office and Home Visits and Radiology in the chiropractic fee schedule. *See* New York State Workers' Compensation Board Schedule of Medical Fees, effective September 1, 1986, as amended through September 1, 1993 (collectively the "1986 Medical Fee Schedule") (codified at 12 N.Y.C.R.R. § 329, Appendix C–3 and submitted in part as Defendant's Trial Exhibit ["Def.Ex."] B); New York State Workers' Compensation Board Chiropractic Fee Schedule, effective September 1, 1988, as amended through September 1, 1992 (collectively the "1988 Chiropractic Fee Schedule") (originally codified at 11 N.Y.C.R.R. § 68, Appendix 17–A, Part C and submitted in part as Plaintiffs' Trial Exhibit ["Pl.Ex."] 2).

12. Each of these sections lists a variety of medical and chiropractic procedures, and assigns to each procedure a number known as a "CPT Code," or Current Procedural Terminology Registry Code. *See* American Medical Association, *Physicians' Current Procedural Terminology* (1989) (submitted as Pl.Ex. 4). These codes represent a uniform numerical classification of the most common treatments and diagnostic tests performed by physicians, chiropractors, and other medical providers. Trial Transcript ("Tr.") at 18.

13. Each procedure listed in the fee schedules also is assigned a number representing its "unit value."

14. To determine the maximum fee a provider may charge for any given procedure, the unit value assigned to that procedure is multiplied by a dollar "conversion factor." *See* Pl.Ex. 2, p. 4; New York State Workers' Compensation Board Chiropractic Fee Schedule, effective September 1, 1988, as amended through September 1, 1993 (collectively the "1993 Chiropractic Fee Schedule") (codified at 11 N.Y.C.R.R. § 68, Appendix 17–A, Part C and submitted as Def.Ex. B–1), p. 4.

15. Conversion factors are provider- and procedure-specific; that is, they apply only to the category of health care provider and type of treatment for which they were established. *See, e.g.,* Tr. at 154–55, 222; Pl.Ex. 2, p. 5; Def.Ex. B, pp. 7, 9, 41, 154, 175.

16. Conversion factors also differ depending upon the location in which a provider practices. Tr. at 153. *See also* Def.Ex. B, p. 7A; Def.Ex. B–1, p. 5. In addition, conversion factors traditionally have been increased annually to reflect yearly increases in the costs of administering treatment. Tr. at 154–55. *See also* Def.Ex. B–1, p. 5.

17. The 1988 Chiropractic Fee Schedule designated conversion factors for Office and Home Visits and Radiology treatments but did not provide conversion factors applicable to diagnostic procedures. Tr. at 155; Pl.Ex. 2, p. 5.

18. Effective March 1, 1993, and September 1, 1993, the Workers' Compensation Board adopted revised chiropractic dollar conversion factors. *See* Def.Ex. B–1, p. 5. These amendments modified the conversion factors applicable to office visits and radiology, but, more importantly, established Electrodiagnostic Testing conversion factors for chiropractors. *Id.*

### III. *Conclusions of Law*

1. Because complete diversity of citizenship existed at the time this action was filed and the amount in controversy exceeds $50,-000, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

2. That plaintiffs' claims are governed by New York State's No–Fault Law is not in dispute.

3. Plaintiffs are not entitled to additional compensation for Computerized Cervical Range of Motion tests performed during office visits. In rendering a decision on the cross-motions for summary judgment, this Court concluded that "simple range of motion exercises and/or tests ... are neither 'unusual' nor 'unique' chiropractic services," and therefore are " 'deemed included under the charges set forth in the Chiropractic Fee Schedule for Office Visits.' " *Introna,* 850 F.Supp. at 165 (quoting *Tucciarone v. Progressive Ins. Co.,* No. 91–1981, November 19,

1992, slip op. at 6–7 [Sup.Ct. Schenectady Co. 1992], *aff'd*, 204 A.D.2d 864, 612 N.Y.S.2d 461 [3d Dep't 1994] ). The Court finds no significant difference between what it previously termed "simple range of motion exercises and/or tests" and the Computerized Cervical Range of Motion tests now under consideration. The only distinction plaintiffs cite is that when conducting computerized tests, Dr. Introna utilized the aid of a computer attached to a three-dimensional arm to measure and record results rather than measuring a patient's cervical range of motion by eye. Tr. at 122–24. Although Dr. Introna testified that use of the computer "adds a dimension of scientific performance" to the test, Tr. at 123, at trial he admitted that he had characterized Computerized Cervical Range of Motion as a "simple test" during his deposition. Tr. at 123–24. Under these circumstances, plaintiffs have failed to meet their burden of demonstrating the "unique" or "unusual" nature of these services, and the Court finds that Computerized Cervical Range of Motion tests are included in fees charged for office visits. Accordingly, these tests are not separately compensable, and plaintiffs' claim for additional compensation is denied.

4. Plaintiffs are entitled, however, to additional compensation for the performance of four remaining categories of diagnostic services, including Autoscreen 3–D, Surface EMG, Neurometer Screen Testing, and Plethysmography. *See Introna*, 850 F.Supp. at 165.

5. When determining a fee, a provider must use the schedule "in effect on the date on which the chiropractic services were rendered, regardless of the date of accident." 12 N.Y.C.R.R. § 348.1. Because the services warranting additional compensation here were rendered between April 1990 and February 1993, the Court must apply the 1988 Chiropractic Fee Schedule to determine the amount of Dr. Introna's fees.

6. Dr. Introna, whose practice is located in Staten Island, New York, falls within conversion factor Region 4. *See* Pl.Ex. 2, p. 6.

7. Dr. Introna may not set his fees for diagnostic services in accordance with those typically charged by other providers in his geographic location. When establishing fees for unscheduled procedures, a health provider may look to the fee prevalent in his or her geographic location *only* where the Workers' Compensation Board has not adopted a fee schedule applicable to that provider. 11 N.Y.C.R.R. § 68.6(b). As this Court recognized previously, the promulgation of a chiropractic fee schedule clearly prohibits Dr. Introna from employing the "prevailing rate" method. *Introna*, 850 F.Supp. at 165–66. Under 11 N.Y.C.R.R. § 68.6(a), Dr. Introna is bound to set his fees in accordance with those charged for comparable procedures.

8. To establish fees consistent with those charged for comparable procedures, the Court first must determine which procedure listed in the schedules is most similar to each of the diagnostic services presently under consideration. (The corresponding unit value for each of these procedures then will be multiplied by an appropriate dollar conversion factor.) At trial, Dr. Introna testified that he ascribed unit values primarily on the basis of the amount of time he spent performing a procedure. *See, e.g.,* Tr. at 69, 71–72, 80. Dr. Introna conceded that he never provided Allstate unit values at the time he submitted his bills, Tr. at 91, and even admitted that he did not compute unit values for any of the tests he performed until preparing his trial testimony. Tr. at 91–92. Clearly, Dr. Introna could not possibly have determined his fees on the basis of comparable unit values.

In contrast, defendant established a system of assigning unit values to the tests performed by Dr. Introna by examining the cost of the equipment Dr. Introna used in conducting a particular test, the training and time needed to perform the test, and the time required to interpret test results. Tr. at 170–71. Defendant then computed unit values for Dr. Introna's tests by adopting those unit values ascribed to procedures similar in cost, performance time, training, and interpretation time.

To ensure internal consistency among fees, it is necessary to establish a coherent

system of assigning unit values and conversion factors. The method developed by Allstate produces the most reliable results, and therefore, taking into consideration the cost of equipment involved, time needed to perform each test, training required, and interpretation time, the Court adopts the following comparable procedures and corresponding CPT Codes and unit values for each of the tests performed by Dr. Introna:

a. <u>Autoscreen 3–D</u>:    Computerized Muscle Tests
CPT Code 97752
Unit Value = 9.7 units [1]

b. <u>Surface EMG</u>:    Needle Insertion EMG
CPT Code 95869
Unit Value = 20 units

c. <u>Neurometer Screen Testing</u>:
Nerve Conduction Velocity
CPT Code 95904
Unit Value = 9 units [2]

d. <u>Plethysmography</u>:    Plethysmography
CPT Code 93890
Unit Value = 30 units

9. Having assigned to each service under consideration a suitable unit value, the Court next must ascertain the appropriate dollar conversion factors for chiropractors performing diagnostic services in Region 4 for each of the years at issue. Because the 1988 Chiropractic Fee Schedule contains no conversion factors applicable to diagnostic services, the Court must look outside the schedule to develop a fair and accurate method by which to measure the proper level of compensation. At trial, plaintiffs proposed application of the medical diagnostic conversion factors in effect during the relevant years to determine Dr. Introna's fees. Defendants developed a more elaborate approach, whereby chiropractic conversion factors are de-

rived by taking a universal fraction of the medical diagnostic conversion factors applicable in Region 4 during the relevant years.

The methodology employed by defendant generates fair and accurate conversion factors that are more consistent with the cost-containing goals of New York State's No–Fault legislation. The Court therefore adopts a chiropractic diagnostic conversion factor for Region 4 in each relevant year equal to 47.5% of that conversion factor assigned medical doctors practicing in the region during the same year. The Court does so for several reasons. First, the schedules in effect as of September 1, 1993, permit chiropractors to charge a maximum fee for diagnostic tests that is only 47.5% of the maximum fee to which medical doctors are entitled for performing the same procedures. *Compare* Def. Ex. B, pp. 7A, 30 *with* Def. Ex. B–1, pp. 5, 6A. *See also* Tr. at 157. Plaintiffs are quick to note that all of the services at issue here preceded enactment of the 1993 amendments, rendering the 1993 conversion factors irrelevant and non-binding. Although the 1993 amendments are not controlling here, the law does permit the Court to "look to the regulations not for their binding effect but for guidance in deciding a legal question that must be answered today." *Allstate Ins. Co. v. Stolarz*, 81 N.Y.2d 219, 224, 597 N.Y.S.2d 904, 906, 613 N.E.2d 936, 938 (1993). The fact that the Workers' Compensation Board saw fit to compensate chiropractors performing identical services at a rate equal to 47.5% of that accorded medical

1. The schedules assign to Autoscreen 3–D tests two different CPT Codes and corresponding unit values depending on whether the test is the first conducted for that patient or is a follow-up procedure. Initial tests are assigned CPT Code 97752, which carries with it a unit value of 9.7 units. Repeat tests are assigned CPT Code 97753, which receives 7 units for each repeat test. The evidence presently before the Court leaves open to question whether Dr. Introna performed initial or repeat tests. However, because both parties presume application of the 9.7 unit value, the Court ascribes CPT Code 97752 and 9.7 units to each of the Autoscreen procedures currently under consideration.

2. The schedules designate four different CPT Codes and corresponding unit values for Neu-

rometer Screen Testing, including 9 units for a test performed on one nerve, 13.5 units when testing two nerves, and 2.5 units for each additional nerve tested. A maximum charge of 27 units is permitted for tests involving eight or more nerves. The information presented to the Court does not distinguish the nature of Dr. Introna's Neurometer Screen Tests. However, because CPT Code 95904, which carries with it a unit value of 9, is the code suggested by the manufacturer of the equipment used in conducting the test, Tr. at 200, and plaintiffs admit that CPT Code 95904 is the proper code to use for Neurometer Screen Testing, Tr. at 177–79, the Court adopts a unit value of 9 for each Neurometer Screen Test performed by Dr. Introna.

doctors may not be controlling, but is persuasive.

Moreover, the conversion factors derived by defendant's method maintain an historically verifiable compensation differential. As noted by defendant's expert at trial, under the 1988 Chiropractic Fee Schedule and the 1986 Medical Fee Schedule, radiology treatments performed by a chiropractor generated fees equal to 47.5% of the fees a medical doctor would have received for performing the same procedures. Tr. at 158. That chiropractors presently and historically have been compensated at a rate roughly the equivalent of half what medical doctors receive convinces the Court that the most equitable and consistent method by which to determine Dr. Introna's fees is not to apply the full value of the medical diagnostic conversion factors but to employ conversion factors equal to 47.5% of the medical conversion factors in effect at the time the services here were rendered.

10. The Court thus adopts the following conversion factors for each of the years relevant to this action:

a. For services performed between September 1, 1989, and August 31, 1990, the applicable chiropractic diagnostic conversion factor for Region 4 is $3.53;

b. For services performed between September 1, 1990, and August 31, 1991, the applicable chiropractic diagnostic conversion factor for Region 4 is $3.74;

c. For services performed between September 1, 1991, and August 31, 1992, the applicable chiropractic diagnostic conversion factor for Region 4 is $3.91; and

d. For services performed between September 1, 1992, and August 31, 1993, the applicable chiropractic diagnostic conversion factor for Region 4 is $4.07.

11. Multiplying the appropriate conversion factor listed above by the unit value previously assigned to each procedure, plaintiffs are entitled to the following:

a. On the claim for compensation contained in the first cause of action for services rendered to patient Joyce DeFillipo, plaintiffs are awarded $324.38;

b. On the claim for compensation contained in the second cause of action for services rendered to patient Marion Bruzzese, plaintiffs are awarded $396.23;

c. On the claim for compensation contained in the third cause of action for services rendered to patient Andrew Zampano, plaintiffs are awarded $372.88;

d. On the claim for compensation contained in the fourth cause of action for services rendered to patient Dominick Zampano, plaintiffs are awarded $301.48;

e. On the claim for compensation contained in the fifth cause of action for services rendered to patient Stephanie Weber, plaintiffs are awarded $324.38;

f. On the claim for compensation contained in the sixth cause of action for services rendered to patient Dario Veloso, plaintiffs are awarded $242.98;

g. On the claim for compensation contained in the seventh cause of action for services rendered to patient Magdy Saad, plaintiffs are awarded $314.83;

h. On the claim for compensation contained in the eighth cause of action for services rendered to patient Robert Marcolini, plaintiffs are awarded $233.43;

i. On the claim for compensation contained in the ninth cause of action for services rendered to patient Ramon Lugo, plaintiffs are awarded $155.23;

j. On the claim for compensation contained in the tenth cause of action for services rendered to patient Roseann Gallo, plaintiffs are awarded $233.43;

k. On the claim for compensation contained in the eleventh cause of action for services rendered to patient Joanna Ferri, plaintiffs are awarded $393.03;

l. On the claim for compensation contained in the twelfth cause of action for services rendered to patient Linda Smith, plaintiffs are awarded $311.63;

m. On the claim for compensation contained in the thirteenth cause of action for services rendered to patient Francine Stassi, plaintiffs are awarded $389.83;

n. On the claim for compensation contained in the fifteenth cause of action for services rendered to patient Lisa Lepre, plaintiffs are awarded $233.43;

o. On the claim for compensation contained in the sixteenth cause of action for services rendered to patient Maureen Moran, plaintiffs are awarded $233.43;

p. On the claim for compensation contained in the seventeenth cause of action for services rendered to patient John Perrotta, plaintiffs are awarded $389.83;

q. On the claim for compensation contained in the eighteenth cause of action for services rendered to patient Gaetana Lambiasi, plaintiffs are awarded $156.40;

r. On the claim for compensation contained in the nineteenth cause of action for services rendered to patient Frank Lopa, plaintiffs are awarded $389.83;

s. On the claim for compensation contained in the twentieth cause of action for services rendered to patient Rosaria Pacifico, plaintiffs are awarded $311.63;

t. On the claim for compensation contained in the twenty-first cause of action for services rendered to patient Roberto Sausa, plaintiffs are awarded $155.23;[3]

u. On the claim for compensation contained in the twenty-second cause of action for services rendered to patient Denise Baselica, plaintiffs are awarded $176.50;

v. On the claim for compensation contained in the twenty-third cause of action for services rendered to patient Linda Boster, plaintiffs are awarded $233.43;

w. On the claim for compensation contained in the twenty-fourth cause of action for services rendered to patient Judy Legato, plaintiffs are awarded $396.23;

x. On the claim for compensation contained in the twenty-fifth cause of action for services rendered to patient Angela Cuoco, plaintiffs are awarded $73.26;

y. On the claim for compensation contained in the twenty-sixth cause of action for services rendered to patient Jean Paul Fratto, plaintiffs are awarded $210.74;[4]

z. On the claim for compensation contained in the twenty-seventh cause of action for services rendered to patient Grace Veloso, plaintiffs are awarded $242.98; and

aa. On the claim for compensation contained in the twenty-eighth cause of action for services rendered to patient Paul Stabile, plaintiffs are awarded $242.98.

12. Plaintiffs hereby are entitled to a total amount of $7,439.64 on the claims listed above.

13. Defendant Allstate asserts that it already has paid to plaintiffs a total amount of $10,521.56 in satisfaction of the above-listed claims. According to the figures provided by plaintiffs, defendant has paid $10,431.65 in satisfaction of those claims. The Court finds it unnecessary to conclude which figure more accurately represents the actual sum paid by Allstate, because either amount exceeds the total award to which plaintiffs hereby are entitled.

14. Plaintiffs may not collect interest on the $7,439.64 award. Although section 5106(a) of the Insurance Law provides that

---

3. Defendant urges the Court not to consider these charges because plaintiffs failed to plead them in the complaint. Allstate correctly notes that with respect to patient Roberto Sausa, plaintiffs originally limited their claim to services rendered in July and August 1992, Complaint ¶ 237, and now seek to recover for services rendered in June 1992. Rule 8(a) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(f) requires the court to accord pleadings a liberal construction so as to "do substantial justice." Where inadvertent mistakes have not misled or prejudiced the opposing party, they should not be held against the pleader. See 5 C. Wright & A. Miller, *Federal*

*Practice and Procedure*, § 1286, pp. 558–59 (2d ed. 1990). Because defendant asserts no prejudice resulting from what is at most a two-month discrepancy, plaintiffs are entitled to recover for services performed in June 1992.

4. Defendant again urges the Court not to consider charges it asserts plaintiffs failed to plead in the complaint. Although defendant correctly notes that with respect to Jean Paul Fratto, plaintiffs limited their claim to services rendered in August 1990, Complaint ¶ 292, the Court finds neither harm nor prejudice in allowing plaintiffs to seek compensation for services rendered to Mr. Fratto in June 1990. See note 3, *supra*.

"[a]ll overdue payments shall bear interest at the rate of two percent per month," plaintiffs already have received from defendant nearly $3,000 more than the present judgment. Because plaintiffs had the beneficial use of the entire sum to which they are entitled, it cannot be said that such payments were "overdue" within the meaning and spirit of section 5106(a).

■ 15. Plaintiffs are entitled to recover reasonable attorney's fees in excess of the limit set by the regulations. Section 5106(a) accords a claimant the right to recover "his attorney's reasonable fee, for services necessarily performed in connection with securing payment of [an] overdue claim, subject to limitations promulgated by the superintendent in regulations." The regulations subject a fee award to an $850 limit. 11 N.Y.C.R.R. § 65.17(b)(6)(v). The courts maintain the power to supplement this award, however, in cases where "the issues in dispute were of such a novel or unique nature as to require extraordinary skills or services" on the part of the attorney. 11 N.Y.C.R.R. § 65.17(b)(6)(vi).

The nature of the issues raised by this action warrant an award of attorney's fees in excess of the regulatory limit. True, plaintiffs may not have been "successful" in the sense that the Court did not adopt their proposed method of establishing Dr. Introna's fees. However, the "focus of an excess [fee] award is not on the result obtained but rather 'on the issues presented, i.e., whether they are novel and/or unique and necessitate extraordinary efforts on the attorney's behalf.'" *Arvatz v. Empire Mut. Ins. Co.*, 171 A.D.2d 262, 270, 575 N.Y.S.2d 836, 839–40 (1st Dep't 1991) (quoting *Maxwell v. State Farm Mut. Auto. Ins. Co.*, 115 A.D.2d 190, 192, 495 N.Y.S.2d 259, 260 [3d Dep't 1985]). The primary issues in this case—whether treatments performed during office visits are separately compensable under the No–Fault Law and whether Dr. Introna charged his patients fees consistent with those charged for comparable procedures—could not have been resolved on well-established principles of law. Indeed, the relevant regulations and chiropractic fee schedules remain silent, and what case law independent research did uncover offered little if any guidance. The Court, therefore, was forced to rely almost exclusively on counsel to furnish unit values, conversion factors, and comparable procedures—in effect, the basic tools needed to determine appropriate fees.

Plaintiffs have not provided evidence of the time counsel spent in preparing this case. Absent some indication of the work expended by plaintiffs' attorney, fixing a fee on the basis of information currently before the Court would be arbitrary. Plaintiffs' counsel therefore must submit within fourteen days of the date hereof a statement evidencing the number of hours expended and type of work performed in preparation of this case. The Court will award a reasonable attorney's fee at that time.

### CONCLUSION

For the reasons set forth above, plaintiffs Mario Introna, D.C. and Chiro Med Health Services hereby are awarded judgment in the amount of $7,439.64. Plaintiffs' claim for interest hereby is denied. Plaintiffs hereby are awarded reasonable attorney's fees, and are directed to file with the Court within fourteen days of the date hereof a statement evidencing the number of hours expended and type of work performed in preparation of this case. After reviewing such statement, the Court will issue a fee award. Because plaintiffs already have received from defendant total payments in excess of the amount to which they hereby are entitled, plaintiffs shall take nothing by their complaint, and judgment shall be entered accordingly.

SO ORDERED.