John T. DOWNEY, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 02 CIV. 6985(RPP).

United States District Court, S.D. New York.

Dec. 9, 2003.

James M. Baker, Esq., Northern Manhattan Improvement Corporation, New York City, for Plaintiff.

James B. Comey, United States Attorney for the Southern District of New York by Susan D. Baird, A.U.S.A., New York City, for Defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, JR.,
District Judge.

Plaintiff, John T. Downey, appeals a June 3, 2002 order of the Appeals Council of the Social Security Administration refusing to review the October 24, 2001 decision of an Administrative Law Judge (ALJ) denying Plaintiff's claim for benefits. Plaintiff moves for an order pursuant to 42 U.S.C. § 405(g), reversing the determination of the Commissioner of Social Security ("Defendant") and remanding Plaintiff's claim solely for the calculation of benefits, or, in the alternative, remanding the Plaintiff's claim for a new hearing and decision. The Defendant cross-moves for a judgment on the pleadings affirming her final decision that Plaintiff was not entitled to disability insurance benefits under the Social Security Act. For the reasons stated below the Defendant's motion is denied and the Plaintiff's motion for remand solely for the calculation of benefits is granted.

### I. Background

In his opinion dated October 24, 2001, the ALJ concluded that Plaintiff was not disabled because "[t]he medical evidence indicates that the claimant has back pain and right knee problems including status post arthroscopy, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. of the entire record of proceedings related to case, submitted by Patrick J. Herbst on January 15, 2003 [hereinafter Rec.] at 221.)

After finding that Plaintiff was not "disabled," the ALJ proceeded to determine whether Plaintiff retained the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520. The ALJ determined that Plaintiff could not perform his past relevant occupations (Rec. at 225 (citing 20 C.F.R. § 404.1565)), but did have "the residual functional capacity to perform a significant range of sedentary work" (Rec. at 226 (citing 20 C.F. R. § 416.967)). Accordingly, the ALJ found that claimant was not under "disability" as defined in the Social Security Act at any time prior to September 30, 1998, the

last date on which Plaintiff was insured for benefits.[1] (Rec. at 226 (citing 20 C.F.R. § 404.1520(f)).) The Appeals Council denied Plaintiff's request for review. (Rec. at 188.)

Plaintiff makes two claims on appeal. First, the ALJ should not have accepted an opinion from a medical adviser over that of a treating physician, because the medical advisor acknowledged his opinion was based on incomplete medical records, and because the ALJ did not advise the medical adviser, who had never treated or examined Plaintiff, of later evidence of a herniated disk. (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. of J. on the Pleadings at 1.) Second, the ALJ failed to make adequate findings respecting the lack of credibility of Plaintiff's testimony about pain. (*Id.*)

*A. The Hearing*

At the hearing held before the ALJ on April 20, 2001, the Plaintiff, Dr. Albert Mylod (a medical adviser), and a vocational expert testified. (*See* Rec. at 228.) Plaintiff testified that he experiences constant pain and he "can't sit down for more than twenty minutes without my [right] leg going numb, my [right] foot going totally numb." (*Id.* at 233.) Plaintiff further stated that the pain is located in his "lower back and it radiates down my right leg into my foot," (*id.*), and that the pain is "sharp when I move, and it throbs later on in the day when I've been doing a lot," (Rec. at 234). He said that he has stopped using a

cane because it did not seem to help much. (*Id.* at 235.) He spends six to ten hours a day lying down, "[b]ecause that's the only position that's not as painful." (*Id.* at 242.) He testified that he had not been able to remain seated for an hour watching television: "I haven't been able to do that for years ... [b]ecause of my back, the back pain and my foot goes numb and the whole leg goes numb" (*id.* at 243). Plaintiff "sometimes" does cooking, cleaning and other housework (*id.* at 236) and walks his then-eight-year old son one and a half blocks to school "sometimes" when his pain is not too great (*id.* at 243–44). He testified that he took the train to the hearing. (*Id.* at 231.) Plaintiff also stated that he could lift and carry "probably five to ten [pounds] at the most." (*Id.* at 237.)

Dr. Mylod, the medical advisor, testified after the Plaintiff. When asked what condition or conditions the claimant had, Dr. Mylod responded, "I'm hesitating here, because I'm not quite sure what's going on here." (*Id.* at 245.) When asked to clarify, Dr. Mylod replied:

He has a long history of having lower back pain with radiation, yet his physical examination, at least what's in the file here, which is, I guess we don't have the treating physician's notes, is hard to figure out—to match up the severity of subjective complaints with his objective complaints. It's reported here that he had an EMG in '94 that was positive for L5–S1 radiculopathy[2]. There is an MRI in this file. It was done by a

---

1. In Plaintiff's reply brief he asserts that his disability period ends September 30, 1999 (Pl.'s Reply Mem. of Law at 8 n. 3). Plaintiff had not previously contested the parts of earlier ALJ decisions that stated that the end of his disability period is September 30, 1998. Plaintiff has been credited with sufficient earnings to be credited with four quarters of coverage in 1995 (Rec. at 266–67). This could make his last date of insured September 30, 1999. Whether Plaintiff's last day of in-

sured is September 30, 1998 or September 30, 1999 is an issue to be decided on remand.

2. Radiculopathy is "damage to the nerve roots that enter or leave the spinal cord ... Symptoms are severe pain and, occasionally, loss of feeling in the area supplied by the affected nerves ..." *The American Medical Association Encyclopedia of Medicine,* 847 (Charles B. Clayman ed., 1989).

chiropractor back in 1994 I believe. It says '92 here, Dr. Ferguson, which mentions that there's an L5 radiculopathy on the right side, but it doesn't mention the S1. It states that there was an MRI in June '92 which was—basically reported no herniated discs. His physical findings basically have had exaggerated neurological findings referable to ... He's had no consistent neurological findings as far as motor, sensory, reflexes. He has pain with motion.

(*Id.*) Dr. Mylod then stated, without citing to the names of the reporting physicians or making specific reference to the documents on which he was relying, "most examinations that are in this file are generally within normal limits." (*Id.*)

Dr. Mylod's testimony misrepresents the EMG and confuses the results of the EMG and MRI. Dr. Mylod corrected the date of the EMG to 1992 (Rec. at 250). He continued to question the results of the EMG because it was conducted by Dr. Ferguson by stating, "I don't know what the qualification of the chiropractor's EMG is." (*Id.*) The EMG was not performed by Dr. Ferguson, the chiropractor[3], as Dr. Mylod testified (*id.*). Rather, it was performed and analyzed by Dr. E. Wiseman, Diplomat American Board of Physical Medicine and Rehabilitation (Rec. at 121). The EMG was "positive for right lumbar radiculopathy mostly involved [sic] L5 root" (*id.*), not at L5–S1 as Dr. Mylod testified (Rec. at 245). Dr. Mylod also testified that this diagnosis was reached by an MRI[4] taken in 1992 by Dr. Ferguson. (*Id.*) The MRI, performed on June 10, 1992, was by Drs. Kellett and Staron, not by Dr. Ferguson (Rec. at 196), and it did not confirm the diagnosis L5 radiculopathy on the right side (*id.*).

Dr. Mylod reviewed the report of Dr. Chamberlin, Plaintiff's treating physician (Rec. at 246), which made a diagnosis of lumbar radiculitus and sciatica (*id.* at 165).[5] Dr. Mylod discounted Dr. Chamberlin's finding that in a workplace setting Plaintiff: (i) can sit continuously for only one hour, (ii) can stand continuously for thirty minutes, and (iii) can walk continuously for one hour (*id.* at 166). Dr. Mylod interpreted Dr. Chamberlin's handwritten note in the margin stating "the above noted estimates of (i), (ii), and (iii) were based solely on possible times and not based on patient's time experience in these activities which are actual" (*id.*) as meaning that the estimates of Dr. Chamberlin were based on Plaintiff's complaints and were not the doctor's own estimates, an interpretation to which Plaintiff's attorney objected (Rec. at 246). Dr. Mylod failed to comment on Dr. Chamberlin's report that plaintiff had to lie down four to six hours a day (*id.* at

**3.** As recognized by the ALJ's decision, a chiropractor is not an "acceptable medical source" (20 C.F.R. § 404.1527(a)(2)), thus "chiropractors cannot provide *medical* opinions." *Diaz v. Shalala*, 59 F.3d 307, 312–14 (2d Cir.1995) (emphasis in original).

**4.** The 1992 MRI reported no evidence of a herniated nucleus pulposis, but did report "endplate impression noted at all levels particularly at L3, L4, and L5 levels." (Rec. at 196.) Another MRI was taken by Dr. Schlaeger in on January 5, 1994. (Rec. at 195.) It reported "the vertebral bodies, especially at L5 is [sic] of increased biconcavity ..." (*Id.*) An endplate is "a flattened terminal discoid expansion at the ending of a motor nerve fibre upon a muscle fibre." *Dorland's Illustrated Medical Dictionary* 491 (L.R.C. Agnew et al. eds., 24th ed.1965).

**5.** Sciatica is "[a]ny condition that is characterized by pain along sciatic nerve (i.e., along the buttock and down the back of the leg); usually a neuritis and generally caused by mechanical compression or irritation of the fifth lumbar spinal root." Ida Dox et al., *Attorney's Illustrated Medical Dictionary* S11 (1997). Sciatica is "most commonly caused by protrusion of a low lumbar invertebral disk." *Dorland's Illustrated Medical Dictionary*, 1609 (29th ed.2000).

165), or that Dr. Chamberlin reported, without any qualifying notes, that during an entire eight-hour work-day, the patient can "sit a total of one hour ... stand a total of 30 minutes ... [and] walk a total of one hour" (*id.* at 167).

Based on his review of the medical records, Dr. Mylod estimated that the Plaintiff would not be able to stand more than fifteen to twenty minutes at a time for a total of two to three hours in an eight-hour day (*id.* at 248). Dr. Mylod added that the Plaintiff would have some limitations walking (*id.*), and he assessed that, with five minute breaks every forty-five minutes to an hour, the plaintiff could sit for six hours in an eight-hour day (*id.* at 249). The maximum weight the Plaintiff could lift, according to Dr. Mylod, would be ten pounds. (*Id.* at 248) Dr. Mylod qualified these estimates by stating that they were based on what he had available to him in the record at the time. (*Id.*)

On cross examination, Dr. Mylod testified that radiculopathy is defined as "having a motor sensory reflex change in an extremity ... that are referable or can be traced to a certain nerve root and coming out of the spinal cord ... It usually has pain associated with it." (Rec. at 249–50.) He also admitted that muscle spasms could be from a pinched nerve. (*Id.* at 250.) He acknowledged that with radiculopathy noted at the right L5–S1 level, the pain would start in the back and "radiate down through the buttocks, down the back of the

leg, somewhere around to the knee, mid-calf." (*Id.* at 251.) He further stated that such pain would cause limitations on the ability to sit (*id.*) and he then asserted that Dr. Chamberlin's report stated that Plaintiff could sit continuously for "one hour to two," (*id.; contra* Rec. at 166–67 (stating plaintiff could sit continuously for one hour in a workplace setting and sit a total of one hour in an entire eight-hour work day)).

## B. Decision of the ALJ

Based on this evidence, the ALJ made the following findings in his decision dated October 24, 2001. (*Id.* at 216.) In concluding that the medical and other evidence does not support Dr. Chamberlin's assessments, the ALJ relied on Dr. Mylod's interpretation of Dr. Chamberlin's handwritten note. The ALJ cited Dr. Mylod's conclusion that Dr. Chamberlin's handwritten note on his report of Plaintiff's ability to work (*id.* at 166) indicated that Dr. Chamberlin was reporting Plaintiff's assertions and not Dr. Chamberlin's estimates (*id.* at 222).[6] Next, the ALJ cites Dr. Chamblerlin's statements 1) that Plaintiff was able to travel alone by subway and/or bus and 2) that as stated in another report,[7] Plaintiff had only a "partial" permanent disability (*id.*).

The ALJ provides other examples of evidence, which he alleges do not support Dr. Chamblerlin's findings. (*Id.*) The ALJ first cites an examination (*id.* at 302) which occurred prior to the disability period of February 1992 to September 1998, showing that in April 1987[8] Plaintiff had no

---

6. This conclusion is questionable. The plain meaning of the note is that the answers are the doctor's own estimates, because the doctor did not have time to record the length of time the patient could actually sit continuously, stand continuously or walk continuously in a workplace setting.

The ALJ does not mention Dr. Chamberlin's unqualified statement that the Plaintiff has to lie down four to six hours a day (Rec. at 165) or his statement the Plaintiff could only sit a

total of one hour in an eight-hour work day (*id.* at 167)

7. This report is dated May 15, 1997 and is contained in Dr. Chamberlin's records received after the hearing. (Rec. at 315.)

8. The record, however, shows that the accident causing the injury from which Plaintiff claims a disability occurred in November 1991 (Rec. at 37–38; *see also id.* at 315) and that Plaintiff stopped working in February 1992 (*id.* at 32, 37).

evidence of a herniated nucleus pulposus (*id.* at 222).

Most disturbing is the following summary by the ALJ of the reports received after the hearing (Exhibits 38, 40 and 41):

> Although the claimant's most recent medical reports state that he is suspected of having pain related to a forminal [sic] disc herniation, the claimant was noted to present no pain on flexion of the spine and had a normal neurological examination, aside from '4/5' right angle dorsiflexion. Moreover the same report documents that the claimant was sole caregiver for his then eight year old son (Exhibit 41) [sic: Exhibit 40].

(Rec. at 222.)

In fact, medical reports from Alistaire K. Selassie, M.D., updated January 20, 2001, refer to an MRI taken after the disability period ended which "demonstrates a right foraminal disc herniation[9] at L4–5 narrowing the neural foramen and contacting the exiting nerve root" (*id.* at 320), and a diagnosis of a spasm[10] (*id.* at 328), as well as pain on extension of the spine to five degrees and pain on right straight leg raise to forty-five degrees (*id.* at 320). Dr. Selassie's report was based on tests taken after the disability period. The ALJ makes no indication that he obtained from Dr. Mylod an evaluation of whether the report from Dr. Selassie, which was received after the hearing, would change his conclusions as to the Plaintiff's abilities to sit, stand, or walk during the disability period.

The ALJ concluded that the claimant's reports of pain and other subjective complaints were not credible (*id.* at 223), although Dr. Mylod on cross-examination admitted that every doctor who examined or treated Plaintiff gave a diagnosis associated with pain (*id.* at 253). The ALJ supports his finding that Plaintiff's complaints of pain were not credible with Plaintiff's testimony that he came to the hearing alone via subway and that he is the "sole caregiver" of his nine year old son.[11] (*Id.* at 223.)

As Plaintiff points out, he would be put in a "Catch–22" situation if appearance at a hearing using public transportation indicates lack of disability and failure to appear at a hearing leads to a default on his claim. (*See* Am. Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings at 22.) Plaintiff had testified to his difficulty in using public transportation at the two previous disability determination hearings (Rec. at 33–34, 59). Accordingly, the ALJ's reliance on this statement to question the Plaintiff's credibility seems misplaced and indicates his unfamiliarity with the content of the medical records.

The ALJ's reliance on Dr. Selassie's comment that Plaintiff "is the sole caregiver to an eight-year-old son, as his wife had to move out last year," (*id.* at 320 (Exhibit 40[12] received post-hearing)) as grounds for

---

9. Lumbar disk herniation is also known as disk prolapse, which is defined as "[a] common, painful disorder of the spine in which an intervertebral disk ruptures and part of its pulpy core protrudes. Disk prolapse causes painful and at times disabling pressure on the nerve." *The American Medical Association Encyclopedia of Medicine, supra* note 2, at 364.

10. In November 1994, Dr. Susan Zahalsky also noted palpable spasm of the lumbar paraspinal muscles when she examined the Plaintiff. (Rec. at 140.)

11. The ALJ also states that the Plaintiff proffered that he could "lift/carry just five pounds." (Rec. at 223.) However, when the ALJ asked how many pounds he could lift, the Plaintiff replied, "Probably five to ten at the most." (*Id.* at 237.)

12. A February 2001 Comprehensive Exam and Treatment Order contained in Exhibit 40 states that the Plaintiff reported that he is having difficulties taking care of his child. (Rec. at 334.)

finding Plaintiff capable of sedentary work, demonstrates an unfamiliarity with the entire medical record. The Plaintiff's claim period ended in September 30, 1999. During the claim period, Plaintiff consistently testified that he had assistance raising his son. At the first hearing in August 1995, Plaintiff testified that his then-wife did the household chores. (*Id.* at 47–48.) At a supplemental hearing in May 1997, he stated that his in-laws and wife help with childcare. (*Id.* at 72–73.) Thus, at the time of his disability period, Plaintiff was not the sole-care giver to his son. Furthermore, the ALJ did not inquire whether Plaintiff currently receives assistance in caring for his son from other family members, nor about the amount of responsibility the child takes on himself. Even at the hearing in April 2001, upon inquiry from the ALJ about Plaintiff's· ability to do housework, Plaintiff testified that he sometimes receives help from his ex-wife and from his parents. (*Id.* at 236.) Plaintiff also testified that he walks his son one to two blocks to school when he can get out of bed and feels that he is able. (*Id.* at 243.) The ALJ did not inquire further about the nature of Plaintiff's child care.

## II. Analysis

■ In addition to the factual errors described above, the ALJ made several legal errors in his analysis. To begin with, he failed to give proper deference to the assessment of Plaintiff's treating physician, Dr. Chamberlin. *See Clark v. Commissioner of Social Security,* 143 F.3d 115, 118 (2d Cir.1998). Dr. Chamberlin's finding that Plaintiff was incapable of engaging in sedentary work on a sustained basis was supported, not only by Plaintiff's complaints of pain, but by the following objective evidence. According to a report by Dr. Chamberlin (Rec. at 315), an April 16,

1992 EMG finding by Dr. Wiseman (*id.* at 121, 199) of radiculopathy at the L–5 nerve root constituted "definitive evidence of spinal injury," (*id.* at 315). The finding of a positive Lasègue sign [13] by Dr. Chamberlin (*id.* at 165) also provides objective evidence of Dr. Chamberlin's diagnosis of sciatica. In view of the clinical support, the ALJ should have based his opinion on Dr. Chamberlin's diagnosis as required by the Social Security Administration's rules. 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). The only evidence cited by the ALJ to find against Plaintiff was the testimony of Dr. Mylod, the medical advisor, which the ALJ accepted without adequate scrutiny. The ALJ erred in giving controlling weight to Dr. Mylod, a non-examining physician who admitted that he was "not quite sure what's going on here" (Rec. at 245) and then testified as to the content of the medical records making inaccurate statements as to their authorship and their content, which the ALJ, apparently unfamiliar with the medical records, accepted without correction or questioning.

First, the Social Security Regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence. *See* 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). *See also, Filocomo v. Chater,* 944 F.Supp. 165, 170 n. 4 (E.D.N.Y.1996) ("[T]he conclusions

---

**13.** Lasègue's sign is "[p]ain along the course of the sciatic nerve when the patient, lying on his back, flexes the thigh on the abdomen and then extends the leg at the knee; it indicates disease of the sciatic nerve." Dox, *supra* note 5, at S30.

of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight.").

Second, Dr. Mylod's factual errors, his hesitation about giving an opinion (*see* Rec. at 245 ("what's in the file here ... is hard to figure out.")) and his admission that he was "not quite sure what's going on here," (*id.*) are grounds for reversal. *See Gonzalez v. Apfel*, 113 F.Supp.2d 580, 589 (S.D.N.Y.2000) (holding the ALJ erred in basing decision on testimony of medical advisor that began, "it's just hard for me to say" and contained factual errors). Furthermore, it was error for the ALJ to accept Dr. Mylod's discounting of Dr. Chamberlin's assessment of the Plaintiff's ability to sit, stand and walk continuously in a work place setting based on his interpretation (Rec. at 246) of Dr. Chamberlin's non-medical, explanatory note (*id.* at 166) instead of accepting its plain meaning. The plain meaning of the explanatory note, that Dr. Chamberlin made estimates rather than timing the patient himself, is consistent with Dr. Chamberlin's unqualified finding that in an eight-hour workday, Plaintiff had to lie down four to six hours a day (*id.* at 165) and his additional unqualified finding that Plaintiff could only sit for a total of one hour, stand for a total of thirty minutes, and walk for a total of one hour in an eight-hour work day (*id.* at 167).

Additionally, the ALJ erred by failing to refer the medical reports received after the hearing to Dr. Mylod for his opinion as to the weight they might bear on his prior conclusions as to the claimant's physical condition, during the disability period ending September 1998. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("The ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.") (quoting *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2d Cir.1983)); *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir.1991) (holding that retrospective opinions may be considered, even if the claimant's condition is a degenerative defect[14]); *Filocomo*, 944 F.Supp. at 170 ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

■ Finally, the ALJ improperly dismissed the Plaintiff's subjective complaints of pain, concluding that because the Plaintiff raises his son and attended the social security hearings using public transportation, his complaints of pain were not credible (Rec. at 223). These citations to the record, while accurate, are not sufficient evidence to support a finding of Plaintiff's lack of credibility as the ALJ concluded (*id.*). *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir.1989) ("When a disabled person gamely chooses to endure pain in order to pursue important goals [such as raising his son, or attending a hearing], it would be a shame to hold this endurance against him in determining benefit, unless his conduct truly showed that he is capable of working."). Here, during the claim period, Plaintiff consistently testified and reported to doctors that he receives assistance from family members with child care and household responsibilities (Rec. at 72–73, 107, 139). At the April 2001 hearing, Plaintiff again testified that his ex-wife and parents assist him. (*Id.* at 236.) Although "subjective *pain* may serve as the basis for establishing disability, even if ... unaccompanied by positive clinical findings or other 'objective' medical evidence," here

---

**14.** This may be the case here as the impression from a myelogram was of a degenerative disc (Rec. at 134); in June 1994, Dr. Antoine suspected lumbar disc herniation (*id.* at 126) and in November of 1994, Dr. Zahalsky diagnosed "degenerative joint disease of the lumbar spine" (*id.* at 140).

there is objective evidence of pain. *Dona-to v. Sec. of Dep't of Health and Human Services,* 721 F.2d 414, 418–19 (2d Cir. 1983) (quoting *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)) (emphasis in original); *see also* 20 C.F.R. 404.1529(c)(2). As Dr. Mylod admitted, every doctor who has examined Plaintiff has reported that Plaintiff asserts that he is in pain. (*See* Rec. at 123, 124, 139, 164, 176, 280.) Objective evidence includes the diagnoses of right-sided L5 radiculopathy (*id.* at 183, 140) as demonstrated in an EMG dated April 16, 1992 (*id.* at 121). Plaintiff has tried a number of remedies including acupuncture (*id.* at 284), epidural blocks (*id.* at 315), and physical therapy (*id.*). He has taken medicines such as Aleve (*id.* at 176), Vicodin (*id.* at 139), Tylenol with Codeine (*id.* at 124), and Naprosyn (*id.*), and has testified that medication does not help to alleviate the pain (*id.* at 65). Furthermore, he acknowledged having used a cane in the past, though he testified that he did not use it anymore, because it "didn't seem like it was helping … that much." (*Id.* at 235.) On such a record, the ALJ should not have reached the conclusion that Plaintiff's subjective complaints of pain were not credible.

### III. Disposition

The only issue outstanding, therefore, is whether this case should be remanded for further evidentiary proceedings or solely for an immediate calculation of benefits. When the Commissioner fails "to introduce evidence sufficient to sustain his burden on the fifth step in the case *sub judice,* remand for the sole purpose of calculating an award of benefits is mandated." *Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir.2000). In this case the ALJ found that Plaintiff 1) is not engaged in substantial gainful work activity; 2) has a severe impairment; 3) the impairment is not listed in the relevant regulation; and 4) the Plaintiff is unable to perform any of his past relevant work.

(Rec. at 225.) *See* 20 C.F.R. § 404.1520. The ALJ failed to complete the fifth step: to meet his burden of showing that work exists that accommodates Plaintiff's residual functional capacity. Substantial evidence shows that Plaintiff is in severe pain due to lumbar radiculopathy. Consequently he cannot remain seated or standing long enough to maintain a job. Moreover, Plaintiff first filed for disability insurance nearly ten years ago. *See Curry,* 209 F.3d at 124 (considering that plaintiff's application for benefits had been pending for more than six years a factor in remanding solely for a calculation of benefits); *Balsamo,* 142 F.3d at 82 (plaintiff's application pending more than four years).

Due to the length of time this case has been pending and the Commissioner's failure to meet her burden, remand for further evidentiary proceedings is not warranted.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for an order reversing the determination of Defendant and remanding Plaintiff's claim solely for calculation of benefits is granted. Defendant's cross-motion for an order granting judgment on the pleadings is denied. The Clerk of the Court is directed to enter judgment for Plaintiff and this matter is hereby remanded to the Commissioner solely for the purpose of the prompt calculation of the benefits to which Plaintiff is entitled and a determination of when the benefits period ended.

IT IS SO ORDERED.