OPINION OF THE COURT
Ferne J. Goldstein, J.
A bench trial was held before this court on April 7, 2000, and *410 continued to May 5, 2000 for completion. The issue in dispute is payment of the remainder of $1,698.30 first-party benefits to the health provider/assignee of a party injured in an auto accident. The claim is pursuant to the applicable provisions of Insurance Law § 5102 et seq., “No Fault” insurance, and the insurance policy issued by the defendant. Both plaintiff and defendant were represented by counsel who have submitted posttrial memos of law concerning the validity of the assignment granted by John Hiotis to the Pain Resource Center.
The defendant made an application for the court to conform the pleadings to the proof and for a directed verdict in its favor. It claims the assignment is not valid as it does not transfer complete control and interest in the property assigned. John Hiotis, the assignor, remains personally liable for any sums not collected (by the assignee). Absent a valid assignment, the plaintiff health provider does not have standing to bring the within action.
In opposition, the plaintiff asserts that the defendant waived said defense by waiting since 1993 to assert lack of standing, and by making a partial payment on the claim in the amount of $113.22. The plaintiff applies for a directed verdict in its favor in that Benjamin Hirsch, Ph D, clinical psychologist and owner of the Pain Resource Center, has made out a prima facie case for payment for health services provided to a covered person involved in an auto accident, under the applicable no-fault law referred to above and the policy issued by the defendant.
The preponderance of the credible evidence elicited from the witness Dr. Hirsch on behalf of plaintiff assignee and from the witnesses for defendant, Ms. Nichols, claims representative, and Richard Lerner, Ph D, psychologist who did peer review of Dr. Hirsch’s submission of diagnosis and evaluation of the patient assignor, revealed the following.
Facts
John Hiotis was referred to the Pain Resource Center by a physician for diagnosis and evaluation of his condition subsequent to being involved in an automobile accident and experiencing pain and headaches and sleeplessness.
After Dr. Hirsch’s intake interview, several batteries of tests were administered to the patient and evaluations were done. Dr. Hirsch’s recommendations were given to the patient and reported to the physician who had made the referral. They included but were not limited to: psychotropic medications and short-term psychological therapeutic interviews.
*411 In his peer review of Dr. Hirsch’s diagnosis, testing and evaluation of John Hiotis’ condition, Dr. Lerner’s strenuous disagreement with the methods used by Dr. Hirsch for determining the patient’s mental status, as unnecessary, was more credible than the voluminous testing explained by the plaintiff. The recommendation by Dr. Lerner to refer a patient with physical symptoms to a neurologist, prior to performing most of the tests following that for mental status, was more reasonable than that of Dr. Hirsch. Of the 16 hours billed by him, Dr. Hirsch gave a breakdown of time as four occasions with John Hiotis: two three-hour sessions and two five-hour sessions, with no actual time spent in administrating, scoring and evaluating the various tests given.
Ms. Nichols testified as to the procedure at Travelers for intake of claims it received from Dr. Hirsch, and the distribution of documents for review and follow-up, i.e., payment and denial. The claim herein was received November 8, 1993. Payment and denial was made December 7, 1993. The claim was received and partially paid and denied within 30 days. The claim was resubmitted for reevaluation January 1, 1994 and the second denial was made February 15, 1994.
Law
The pertinent portion of the assignment in question is: -
“i HEREBY AUTHORIZE AND DIRECT MY INSURANCE COMPANY TO PAY ALL BENEFITS DIRECTLY TO THE MEDICAL PROVIDER NAMED below:
“the pain resource center
“629 WILDWOOD ROAD
“west HEMPSTEAD, NY, 11522
“this is a direct assignment of my rights and benefits under this policy. This payment will not exceed my indebtedness to the above-mentioned assignee, and I have agreed to pay, in a current manner any balance of said professional service charges over and above this insurance payment.”
Pursuant to General Obligations Law § 13-101, any claim or demand can be transferred except in one of the following cases:
“1. Where it is to recover damages for personal injury;
“2. Where it is founded upon a grant which is made void by a statute of the state; or upon a claim to or interest in real property, a grant of which, by the transferrer, would be void by such a statute;
“3. Where a transfer thereof is expressly forbidden by a statute of the state, or of the United States, or would contravene public policy.”
*412 In Aetna Life & Cas. Co. v Nelson (67 NY2d 169, 175), a case involving application of the Statute of Limitations to be used in certain no-fault situations where the insurer seeks to recoup first-party benefits it paid, the Court of Appeals articulated a principle applicable herein, which is “the No-Fault Law does not codify common-law principles; it creates new and independent statutory rights and obligations in order to provide a more efficient means for adjusting financial responsibilities arising out of automobile accidents.”
Insurance Law former § 670 et seq. (now art 51) abrogates a common-law right and thus must be strictly construed. (Morgan v Bisorni, 100 AD2d 956 [1984].)
Insurance Law § 5108 (a) and (b) authorize a health provider to receive fees as per the schedules prepared and established by the Workers’ Compensation Board. In section 5108 (c) a health care provider is forbidden to “demand or request” any payment in excess of the authorized charges from the no-fault patient.
Under the applicable provisions of 11 NYCRR 65.15 the term “assignee” is used in regard to payment by the insurer:
“(j) Direct payments. (1) An insurer shall pay benefits for any element of loss * * * or, upon assignment by the applicant * * * shall pay to the providers of services * * * directly.
“(2) If an assignment has been furnished an insurer, the assignor or legal representative of the assignor shall not unilaterally revoke the assignment after the services for which the assignment was originally executed were rendered. If the assignment is revoked for services not yet rendered, the assignor or legal representative shall provide written notification to the insurer that the assignee has been notified of the revocation.”
Conclusions of Law
The assignment herein is not made void by any statute; to the contrary, it is authorized in the no-fault statute, by application of 11 NYCRR 65.15. It has not been revoked and is not expressly forbidden by any statute of the United States nor does it contravene public policy.
Further, the language used in the assignment herein is on point when comparing it to the language of that used in Gin-gold v State Farm Ins. Co. (168 Misc 2d 62, 64 [Civ Ct, Queens County 1996]) wherein it was held to be “ ‘an assignment of first party benefits due plaintiff as a covered person under the subject policy and the Comprehensive Auto Insurance Reparations Act (Insurance Law, Sec. 671, subd. 2, 10).’ ”
*413 In Murali v Upton (175 Misc 2d 186 [Civ Ct, NY County 1997]) a portion of the legally permissible fee was still outstanding after the insured’s first-party no-fault benefits were exhausted and the surgeon plaintiff sued the patient defendant. The defendant paid some of the fee and assigned to plaintiff $8,545 from the proceeds of his personal injury lawsuit. He then moved for dismissal of the action. The court did not dismiss, but reduced the ad damnum to that which was legally recoverable.
The amount claimed in the within assignment as a fee, provided pursuant to the schedule in 11 NYCRR 65.15, is a limitation on the fee that can be charged. If the ad damnum in the provider’s lawsuit is in excess of that which is legally permissible, the action would not be dismissed, but the ad damnum will be reduced to the amount legally recoverable at trial.
This court respectfully disagrees with the decision and holding of Judge Duane A. Hart in Rehab Med. Care v Travelers Ins. Co. (184 Misc 2d 140 [Civ Ct, Queens County]).
The testimony of defendant’s witness, Dr. Lerner, was more credible and persuasive than that of plaintiff assignee Dr. Hirsch, to the extent that the prima facie case the plaintiff made out was for six hours of medical services provided.
Judgment is awarded to the plaintiff in the amount of $566.10. The amount of $113.22 paid by the defendant for one hour is subtracted from the total of $679.32, leaving a balance due from the defendant of $566.10, plus interest per statute of 2% compounded monthly from December 8, 1993. Statutory attorney’s fees are awarded to plaintiffs counsel, as well.