OPINION OF THE COURT
Debra §ilber, J.
Plaintiffs motion for summary judgment is granted. Plaintiff may enter judgment for the amount demanded in the complaint.
This is an action to recover first-party no-fault benefits for medical supplies furnished by plaintiff to its assignor, Joel St. *283 Louis, on October 25, 2001 and on December 1, 2001. Plaintiff’s assignor was injured in an accident on October 10, 2001. Plaintiff is a medical supply company, who submitted bills for the medical supplies to defendant insurance company on December 7, 2001 and on January 14, 2002 in the amounts of $1,070.13 and $1,070.31, respectively. It appears that the December 1, 2001 bill, sent January 14, 2002, was received by the defendant on January 22, 2002 and timely denied on February 13, 2002, based on a claim of peer review. Defendant claims, but produces no proof, that the October 25, 2001 bill, sent December 7, 2001, was received on December 10, 2001 and that defendant sought verification pursuant to 11 NYCRR 65.15 (d) (2). Plaintiff has not raised an allegation of a late denial. Neither side has produced a copy of the denial.
Defendant’s first argument, that the assignment from Joel St. Louis to plaintiff is invalid and therefore plaintiff has no standing to sue, is without merit. The authorization by plaintiffs assignor to pay no-fault benefits constitutes an assignment enabling the plaintiff health care provider to sue to recover the insurance proceeds applicable to the medical service provided. (Rehab. Med. Care of N.Y. v Travelers Ins. Co., 188 Misc 2d 176 [App Term, 2d Dept 2001]; Gingold v State Farm Ins. Co., 168 Misc 2d 62 [Civ Ct, Queens County 1996]; see also, Pain Resource Ctr. v Travelers Ins. Co., 185 Misc 2d 409 [Civ Ct, Kings County 2000].) The authorization is permitted by 11 NYCRR 65.15 (j) which states: “Direct Payments. (1) An insurer shall pay benefits for any element of loss, * * * directly to the applicant or, * * * upon assignment by the applicant * * * shall pay the providers of services * * * directly.” The language of the assignment is as follows:
“I, the undersigned, request that payment for orthopedic and medical supplies rendered me now and any future services, be paid directly to s&m medical supply inc. I, also authorize my attorney to pay s&m medical supply as soon as possible out of any proceeds of settlement or trial or other similar medical payments by insurance.”
There is no mention in the assignment language of any intent to revoke the assignment, and thus it operates as a valid assignment allowing plaintiff to sue as an assignee for the medical supplies it provided to its assignor. (Craniofacial Pain Mgt. v New York Cent. Mut. Fire Ins. Co., 186 Misc 2d 309 [Civ Ct, Queens County 2000].)
Turning to the merits of the case, on February 25, 2002, defendant denied all orthopedic benefits and services based on an *284 independent medical examination (IME) conducted on February 6, 2002, almost four months after the accident. The IME doctor apparently reported a normal exam, and stated that the back, left arm and left leg injuries had resolved. The denial stated that there was no need for physical therapy, and that all orthopedic services and benefits would terminate on March 2, 2002.
Plaintiffs assignor had been treated by Yuly Kotsovsky, M.D. since October 23, 2001. Dr. Kotsovsky prescribed certain medical supplies* for use by the plaintiffs assignor. Dr. Kotsovsky’s letter of medical necessity states that the patient “was placed on a comprehensive rehabilitation program in the office and home, which consist of using multiple physical modalities, massages and therapeutic exercises.” As part of the rehabilitation and treatment program, the doctor states “the equipment was prescribed for everyday use in the home.”
Defendant disputes Dr. Kotsovsky’s medical conclusions but has failed to include the peer review itself or the IME report, or even the name of the IME doctor. Plaintiffs attorney claims he has never seen a copy of the peer review report. (See, Park Health Ctr. v Prudential Prop. & Cas. Ins. Co., 2001 NY Slip Op 40650 [U] [App Term, 2d Dept 2001] [summary judgment denied to plaintiff as defendant submitted affirmed IMEs which raised a triable issue of fact as to the necessity of medical services].) The body of the denial states that “there was no need” for the TENS unit, massager and cervical traction as those medical supplies “are utilized by the treating provider under strict guidance and supervision while the claimant is on active physical therapy. The peer physician notes that as these were duplications of the physical therapy modalities there was no medical necessity established.” However, Dr. Kotsovsky states that the medical equipment was for daily home use. As defendant has not supplied the IME or the peer review itself, without any evidence in admissible form, defendant cannot raise a triable issue of fact and the plaintiffs motion for summary judgment is granted.
It is noted that the letter dated February 20, 2002 terminated neurological benefits effective February 26, 2002 and a letter dated February 25, 2002 stated that all orthopedic benefits *285 would terminate March 2, 2002 but these claims were submitted and denied prior to these dates.
It is important to clarify the distinction between suits by medical providers for no-fault benefits based upon substantive denials versus procedural denials. While a suit for payment on the basis of an untimely denial would usually not require evidence in admissible form from a physician in opposition to a plaintiffs motion for summary judgment, a suit for payment challenging a denial for medical reasons requires evidence in admissible form from defendant’s expert, to substantiate the denial issued by the insurance company. The case law is clear that the plaintiffs provision of services or equipment and the submission of the bill to the carrier is prima facie evidence that the goods or services were provided. (Park Health, supra.) Thus, an affirmation from a physician is necessary to support defendant’s denial based on the conclusion that there was no medical necessity for the goods or services. The 12-page affirmation from defendant’s attorney is unavailing in this regard.

 The first bill was for: orthopedic pillow; two piece cervical collar adj.; infra-red heating lamp w. stand; bed board w/ mattress; car seat; custom fitted lumbo-sacral support. The second bill was for: TENS unit four lead; TENS belt with straps; TENS accessory kit; back contour massager; and cervical traction.