OPINION OF THE COURT
Debra Silber, J.
The plaintiff moves for summary judgment, for $2,522.86, with regard to first-party claims for no-fault benefits for *668 plaintiffs assignors with regard to medical supplies and equipment that plaintiff provided. For the reasons set forth herein, the motion is denied.
Statement of Facts
Plaintiff provided certain medical supplies and equipment to its assignors, and billed defendant for them, pursuant to the No-Fault Insurance Law. Within the 30-day time period provided by statute and regulation, defendant denied payment for one item, and provided a technical reason stated below (as opposed to a substantive one), and paid for the remainder of the items, but not in the amount sought. Plaintiff cashed the checks, and now plaintiff sues for the balance of the original claims.
With regard to patient Petit-papa, the claim was for $1,250 for a cold pack, whirlpool, TENS unit and TENS belt. The defendant disallowed the TENS belt, $90, with a technical denial, stating on the Explanation of Benefits form that “the CPT/ HCPCS code reported by the provider are included in another procedure reported on the bill (#11).” This is not clear to the court, but, as the analysis employed below is equally applicable to this item, in that plaintiff has failed to make out a prima facie case for the amount claimed, there is no separate discussion about this $90 claim. With regard to the other items, defendant made partial payment for each of them ($237.94 of the $1,160), stating they were paying the reasonable and customary fee for the item, as “the fee cannot be calculated pursuant to the New York State Workers’ Compensation Board Schedule of Medical Fees.” Plaintiff now seeks summary judgment for $1,012.06, the balance of the claim which remains unpaid.
With regard to patient Baudouin, the claim was for $1,220 for a whirlpool, TENS unit and TENS belt. The defendant made partial payment for each of them ($227.70 of the $1,220), stating “ [r] eimbursement has been made based on the physician’s prescription, the MMIS orthotic fee schedule (at 155%) and/or usual and customary pricing for the items billed (at 150%). See attached analysis.” Plaintiff now seeks summary judgment for $992.30, the balance of the claim which remains unpaid.
With regard to patient Franklin, the claim was for $830 for a deep heat massager, cervical collar, cervical pillow, lumbosa-cral support, thermophore, and lumbar cushion. The defendant made partial payment for each of them ($311.50 of the $830), stating with regard to the cervical collar and lumbosacral support “Based on the information submitted, the procedure code has been changed or referred to another which more accurately *669 reflects the services rendered,” and with regard to the remainder of the items, they were paying the reasonable and customary fee for the item, as “the fee cannot be calculated pursuant to the New York State Workers’ Compensation Board Schedule of Medical Fees.” Plaintiff now seeks summary judgment for $518.50, the balance of the claim which remains unpaid.
The defendant acknowledges in its opposition papers that the applicable laws and regulations are as follows. For medical equipment, the Twenty-Third Amendment to Regulation 83 (11 NYCRR part 68) of the New York State Insurance Department (Appendix 17-C, parts E, F) is applicable.[1] The regulation applicable to the motion herein states: “[f]or medical equipment and supplies (e.g., TENS units, soft cervical collars) provided by a physician or medical equipment supplier, the maximum permissible charge is 150 percent of the documented cost of the equipment to the provider.” (11 NYCRR Appendix 17-C, part E [b] [1].)
It is noted that part F covers “[p]rosthetic and orthotic appliance supplies,” which has a different formula and incorporates a fee schedule, but that neither side has established whether any of the claimed items fall into this category (part F), and so the court can only assume that it is inapplicable to the claims herein, and that part E (entitled “Drugs, medical equipment and supplies”) is the applicable regulation.
Other than the one item denied for technical reasons, as set forth above (Petit-papa), the defendant paid for all of the items in part, that is, each item of supplies and/or equipment was approved for payment, but the amount paid was less than the amount claimed. Defendant claims that it is allowed to interpret the above regulation to include the additional requirement of reasonable and customary cost. Defendant based its allowances for medical equipment on a survey done for defendant, using the average prices for these items obtained by its surveyor. An affidavit from Joanne Clayback, director of Managed Care Services at MedEquip Solutions Corp., dated September 23, 2002, is provided by defendant in its opposition papers. Therein, Ms. Clayback explains the price review studies performed for defendant in 2001 (the same year as the claims arose), which resulted in a list of average prices for specified medical equipment, which averages defendant appears to have adopted as the allowable amount for these items. *670 In other words, Ms. Clayback’s company was hired to prepare studies, did so, and the average price (an average of approximately six prices for each item, located in catalogs and on the Internet from suppliers throughout the country) as indicated in the charts annexed to her affidavit, are the amounts which have been adopted by defendant as “reasonable and customary” and which were allowed and paid by defendant for the claims at issue herein.
At this juncture, it is noted that the difference between the amount billed by plaintiff for the items and the amount claimed by defendant to be the average cost of the same items is very significant. For example, plaintiff claims that 150% of its supplier’s cost for a 4-lead TENS unit is $610, and defendant claims it should be $72.68, and for a whirlpool to be placed in a bathtub, plaintiff claims it is entitled to $520, and defendant claims $155, is 150% of wholesale. Therefore, while this case is about a claim for $2,522.86, it appears that the interpretation and implementation of the law will have a significant impact.
Plaintiff argues that the regulation clearly allows for 150% of the wholesale cost charged to the provider by its supplier, and that by paying a different amount, the defendant is violating the law. Defendant responds in part with an opinion from an arbitration at the American Arbitration Association,[2] which opinion states:
“The issue is what the fee schedule allows for a TENS unit. * * * Every-where the fee schedule makes accommodations with fair market charges in order to keep the system from going bankrupt. Unfortunately, the cost of supplies to the supplier was left without specified criteria when it was framed in 1994. Perhaps this was an oversight at a time when billing for medical supplies had not reached the extreme number of claims known today — as exemplified by the billing for the TENS unit in this case, and the hundreds of supply arbitrations I hear where billing routinely exceeds $1,000. Did the Insurance Department and Workers Compensation Board intend that suppliers may inflate their costs as they see fit? Is there no regulatory duty imposed on a supplier to obtain a ‘necessary’ implicitly fair market cost before billing No Fault? Is the wholesale cost of supplies the one area *671 in the fee schedule where costs have been left to the sole discretion of the provider so that the sky is the limit? I think not, and I find that a supplier has the implicit duty to obtain a ‘necessary’ cost of supplies, not an inflated, outrageous cost out of compliance with the customary, reasonable market price. A supplier who is allowed to choose any wholesale cost, the highest wholesale cost he can find, is a supplier who abuses and even is encouraged to abuse the No Fault System. He is also encouraged to collude with wholesalers to document jacked-up wholesale costs. As a consequence, I find that Respondent, when reviewing charges and wholesale invoices for supplies, may present evidence that the wholesale cost was not necessary, reasonable, or customary, and should be reduced, before the 150% formula is applied.”
Conclusions of Law
The plaintiff has failed to make out a prima facie case for the relief requested by the motion for summary judgment. (See CPLR 3213; Republic W. Ins. Co. v RCR Bldrs., 268 AD2d 574 [2d Dept 2000].) It appears there is no reported case which establishes the requirements for a prima facie case for summary judgment with regard to first-party no-fault benefits for medical supplies or equipment. The issue of proof is different from that for a claim for physician’s services, as the regulation concerning the methodology for reimbursement is different. The applicable regulation, as cited above, states that the maximum charge, and therefore, the maximum reimbursement, is 150% of the documented cost of the equipment to the provider. The court thereby holds that to prove cost, the provider must prove what the wholesaler or supplier charged plaintiff. The plaintiff has failed to do so. Therefore, the motion is denied.
To the extent that this court’s earlier opinion, S&M Supply v New York Cent. Mut. Fire Ins. Co. (193 Misc 2d 282 [Civ Ct, Kings County 2002]), does not address this issue, as the issue in that case was the medical necessity for the equipment, I want to clarify that decision. While it is true that “plaintiff’s provision of services or equipment and the submission of the bill to the carrier is prima facie evidence that the goods or services wereprovided” (id. at 285 [emphasis added]), when medical equipment or supplies are at issue, for summary judgment, plaintiff must provide prima facie evidence of the cost of the equipment or supplies.
*672 The court completely adopts the defendant’s argument that to make out a prima facie case requires proof of the “documented cost,” and thus the cost must be documented. In other words, the plaintiff must submit proof, in admissible form, that it was actually charged the amount it claims it was charged. Perhaps an invoice together with corroborating documentation, such as a cancelled check in the amount of the invoice, contemporaneously dated, would be sufficient. Perhaps an affidavit from the plaintiff that it ordered the items at the price on the invoice, and then paid for them, together with the invoice and the check, would be sufficient. But in the instant case, plaintiff has merely submitted photocopies of three invoices from Greco Distributors, Inc., one for each of the three patients at issue, which are not admissible as they are not plaintiffs business records. While in some circumstances they might be found to be admissible,[3] perhaps if accompanied by an affidavit authenticating them, as submitted, they are not admissible and are not prima facie proof of the charges recited therein. The “invoices” might merely be documents created by plaintiff. There is no indicia of authenticity.
It is worthy of notice that there is nothing unique about this equipment. If plaintiff buys a dozen TENS units from a distributor, there is no way to know if one of those was in fact the one given to the patient. It is possible that the same invoice, one with the highest price available for an item, may be used by a provider for multiple claims, while the provider actually pays much less for the equipment by buying it from less expensive suppliers. Thus, an affidavit from someone with personal knowledge seems a reasonable prerequisite for a summary judgment motion.
Finally, the court is troubled to report that, if the results of a quick LEXIS search are correct, the supplier Greco Distributors, Inc. was not lawfully in business on the dates indicated on the invoices provided by plaintiff, having incorporated in September of 2000, and then having voluntarily dissolved the corporation one month later, in October of 2000.
While plaintiffs failure to make out a prima facie case allows the court to deny the motion without analyzing the opposition, it is the opposition that focused the court on the issue of what is needed for a prima facie case. In connection therewith, and for guidance, I hold that an insurer may not modify the regula *673 tion or interpret the regulation and apply the additional requirement of “reasonable or customary cost” in reviewing claims for medical equipment and supplies. Therefore, to the extent that the arbitrator’s decision provided by defendant interprets “documented cost” in the regulations to allow the consideration of the reasonable cost for medical equipment and supplies as an alternative to considering a provider’s actual costs, the court finds that this is a matter for consideration, and clarification, by the New York State Department of Insurance and/or the New York State Legislature, and is not permitted by law, as the regulations are unambiguous.
There is no definition of “documented cost” in the regulations promulgated by any New York State agency, by any statute, or by any case reported in New York, as this court has searched all three of these databases in LEXIS for such definition. Therefore, the plain meaning of the words is to be employed. “Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76). Documented means proven by reference to documents, and cost (as a noun) means “price, the amount of money asked or paid for a thing; the amount paid for something by a dealer, contractor, etc.: a markup is usually added to this amount to arrive at a selling price.” (Webster’s Unabridged Dictionary.)
Therefore, the defendant insurer cannot impose requirements on medical providers outside the scope of the regulation. The defendant’s position that a provider of medical equipment should shop on the Internet across the entire country for the best price may or may not be what the Department of Insurance had in mind. Unfortunately, the regulation seems to have been written with a great deal of naiveté, as the economic concept of free-market price regulation does not seem to be alive and well in Brooklyn.
As an aside, it is noted that the attorneys for both sides opined, after the colloquy at oral argument, that the principles of accord and satisfaction are not applicable to this motion, as first-party no-fault claims are creatures of statute and regulation. 11 NYCRR 65-3.8 (d) is cited by defendant to state (and I have verified this cite) that “[w]here an insurer denies part of a claim, it shall pay benefits for the undisputed elements of the claim. Such payments shall be made without prejudice to either party.” While the court finds this issue of interest, as “part” of a claim may or may not mean partial payment *674 for an item, the parties have not raised it, and thus this decision makes no finding on this issue.

. Located in 11 NYCRR Appendix 17-C.

. Life Aid Med. Supplies v GEICO, AAA No. 17 991 07123 01, Aug. 8, 2001.

. The admissibility of bills received by the party seeking to admit them is an unsettled issue, it seems. (See Dailey v Estate of Grogan, NYLJ, Oct. 3, 2003, at 19, col 1 [Civ Ct, NY County].)