Argued and submitted July 30, affirmed December 10, petitioners' petition for reconsideration filed December 23, 2003, allowed by opinion February 18, 2004
See 192 Or App 200, 84 P3d 823 (2004)

## SAIF CORPORATION
## and Terminal Transfer, Inc.,
### *Petitioners,*

*v.*

## Paul E. ROSS
## and Department of Consumer & Business Services,
### *Respondents.*

## H00-111 and H00-041; A118745

82 P3d 1035

Jerome P. Larkin argued the cause and filed the briefs for petitioners.

Nelson R. Hall argued the cause for respondent Paul E. Ross. With him on the brief was Bennett, Hartman, Morris & Kaplan, LLP.

Richard D. Wasserman, Assistant Attorney General, waived appearance for respondent Department of Consumer and Business Services.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

SCHUMAN, J.

* Wollheim, J., *vice* Kistler, J., resigned.

## SCHUMAN, J.

■ The Director of the Department of Consumer and Business Services (director) issued an order requiring petitioner SAIF Corporation (SAIF) to pay for claimant's chiropractic treatment, concluding that claimant had provided SAIF with an adequate treatment plan even though different components of the plan came to SAIF in separate documents. SAIF seeks judicial review, arguing that the relevant rule requires a plan submitted in a single document signed by claimant's treating physician. We review the interpretation of an agency rule for legal error, ORS 183.482(8)(a), but we defer to an agency's interpretation of its own rule if that interpretation is plausible and is not inconsistent with the rule's wording, its context, or any other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). We conclude that the director's interpretation meets that standard; we therefore affirm.

A covered worker who suffers from a compensable condition that renders the worker permanently and totally disabled is entitled to reimbursable medical services required to treat that compensable condition even after the worker is medically stationary. ORS 656.245(1)(c)(A). Those services may be provided by a medical service provider who is not the claimant's attending physician if the following requirements, set out in *former* OAR 436-010-0230(3)(a) (1999), *renumbered as* OAR 436-010-0230(4)(a) (2003), are met:

> "[S]ervices * * * by a medical service provider other than the attending physician shall not be reimbursed unless carried out under a written treatment plan prescribed * * * and approved by the attending physician * * *. The treatment plan shall include objectives, modalities, frequency of treatment and duration. The treatment plan may be recorded in any legible format including, but not limited to, signed chart notes. A copy of the signed treatment plan shall be provided to the insurer by the attending physician * * *."[1]

---

[1] *Former* OAR 436-010-0230(3)(a) contained several deadlines for submitting forms, one of which is that the treatment plan must be signed by the attending physician within 30 days of when treatment began. In this case, treatment began in 1992. SAIF did not request a signed treatment plan until 1999. Before the

A chiropractor is a "medical service provider" for purposes of this rule. *Former* OAR 436-010-0230(3)(b), *renumbered as* OAR 436-010-0230(4)(b) (2001). The dispute in this case is whether SAIF received a treatment plan in some "legible format," "signed by the attending physician," and including "objectives, modalities, frequency of treatment and duration."

The following undisputed facts are taken from the director's final order, which accepted, with supplementation, facts found by an administrative law judge (ALJ) after SAIF sought review of an administrative decision. Claimant suffered a work-related back injury in 1983 and was declared permanently and totally disabled in 1987. He moved to Arizona where, in 1992, he began chiropractic treatment on a twice-monthly basis with Dr. Watts. SAIF paid for these treatments until November 1999. Then, for reasons not apparent from the record, SAIF sent a letter to Watts requesting a description of claimant's treatment plan. At the same time, SAIF sent claimant's attending physician, Dr. Lindow, a letter containing a summary of Oregon workers' compensation regulations that Lindow had to follow and stating that chiropractic treatment would be reimbursed only if Lindow provided a written treatment plan. The letter did not outline the specific requirements of *former* OAR 436-010-0230(3)(a). That information reached Lindow in a February 15 letter from SAIF informing him that, "If Chiropractic treatment is to be continued as part of your treatment plan, please indicate specifically for which condition(s) the treatment is to be provided and provide a treatment plan which includes; specific modalities, frequency, duration, the anticipated goal(s) of the treatment and explain how the worker's progress is to be measured." Thus, by mid-February 2000, both Watts (the ancillary service provider) and Lindow (the attending physician) had received letters from SAIF

---

department and on appeal, SAIF alludes to the fact that the treatment plan was not signed within 30 days of beginning treatment but identifies the date that begins the 30-day period as March 3, 2000, without explaining why that date and not one in 1992 is relevant. Further, SAIF does not frame the issue as one involving failure to meet deadlines but as whether the plan must be a single statement "complete unto itself" and not as a "cobbled together" collection. We therefore do not address any issue regarding time limits.

requesting the information required by Oregon's workers' compensation rules.

Several exchanges of letters among SAIF, Lindow, and Watts ensued, the contents of which we need not detail. Suffice it to say that SAIF requested that the Medical Review Unit (MRU) of the Workers' Compensation Division of the Department of Business and Consumer Services review claimant's eligibility for continued chiropractic treatment. At the time it rendered its decision, the MRU had before it a record containing a copy of a fax from Watts to SAIF, not signed by Lindow, describing claimant's treatment plan as follows:

> "Objective: to keep pain to a liveable level
> "Modalities: ice, warm compress
> "frequency: 2 to 3 times per month
> "duration: life time"

The MRU also had correspondence from Watts to SAIF indicating that claimant received treatment two times per month and at other times as necessary; that the duration of the treatment was for the rest of claimant's life; that the objective was pain control; and that the modalities included ice, warm compress, and "hands on adjustment" (although Watts insisted that such treatment was not properly called a "modality"). And it had a signed prescription from Lindow authorizing chiropractic care. On the basis of those documents, the MRU concluded that the criteria for a treatment plan had been satisfied and that SAIF was responsible for chiropractic treatments from the time it had stopped providing them into the future.

Seven days later, on October 31, 2000, SAIF once again sent a letter to Lindow requesting a treatment plan. Shortly thereafter, it indicated its intention to appeal the MRU's determination that claimant had provided a treatment plan that complied with the relevant rule.

SAIF's request for a treatment plan from Lindow went unanswered. It sent another request on January 24, 2001, and informed Lindow that it would not be paying for chiropractic services rendered since October 31, 2000. Lindow responded on January 31, stating, "As you know from my previous correspondence, I am not treating [claimant] for

his back problem, nor do I feel competent to give a specific chiropractic therapy order. I wrote Dr. Watts, [claimant's] chiropractor, November 8, 2000, requesting him to provide you with that treatment plan. * * * Please consider this letter as my prescription for continued chiropractic treatments for [claimant], on an every-2-weeks basis, as outlined by his chiropractor, Dr. Watts."

An ALJ heard SAIF's appeal from the MRU order in July 2001. In a proposed final order issued in February 2002, the ALJ reversed the MRU, concluding that SAIF had not received a written treatment plan prepared in compliance with *former* OAR 436-010-0230(3)(a). The ALJ relied on *Aetna Casualty & Surety Co. v. Sue A. Blanton*, 139 Or App 283, 287, 911 P2d 363 (1996), where this court held that the rule requiring a written treatment plan would not be waived, even when the attending physician had explicitly, but orally, approved the plan. The ALJ interpreted *Aetna Casualty & Surety Co.* and *former* OAR 436-010-0230(3)(a) to require an integrated document containing both the substantive requirements of the rule and the attending physician's signature.

Claimant filed exceptions to the hearing officer's proposed order, arguing that the documents submitted to SAIF amounted to a valid medical treatment plan. The director agreed, adopting the reasoning of the MRU: the documents exchanged among SAIF, Lindow, and Watts before and after March 3, 2000, contained a plan in compliance with the relevant rule:

> "Here, claimant moved to Arizona in September 1991 and began treating with Dr. Watts in 1992. Dr. Watts' chart notes from January 1992 to April 2000 listed the dates of service and the segments adjusted (such as the sacral apex, pelvis, and lumbar). Beginning in November 1999, the chart notes included claimant's pain level. When, in January 200[0], the insurer requested a treatment plan, both Drs. Lindow and Watts stated that the goal of chiropractic treatment was ongoing pain control. Dr. Lindow also noted that claimant obtained relief from his chronic back condition from the chiropractic treatment. Thus, the 'objective' of the chiropractic treatment was pain control. Although a simple prescription for 'chiropractic treatment'

is insufficient to satisfy the modalities requirement * * *, Dr. Watts' chart notes and letters stated that the modalities were hands-on adjustments. Dr. Watts further stated that the treatment had been the same regimen for eight years. The frequency and duration requirements were met based on Dr. Watts' statement that treatment was and has been twice per month since 1992 and based on Dr. Lindow's statement that the chiropractic treatment was necessary to manage claimant's ongoing pain. Dr. Lindow approved Dr. Watts' treatment plan on February 22, 2000, on June 13, 2000 and again on January 13, 2001. Thus, chiropractic treatment provided after March 2000 is reimbursable."[2]

(Footnotes and citations to the record omitted.)

■  As noted above, we will uphold an agency's interpretation of its own rule if the interpretation is plausible and is not inconsistent with the rule's wording, its context, or any other source of law. *Don't Waste Oregon Com.*, 320 Or at 142. Nothing in the text of *former* OAR 436-010-0230(3)(a) states or implies that the medical treatment plan must appear in a single document. Indeed, the plan must contain different varieties of information—its objectives, modalities, frequency of treatment, and duration—and it may appear in signed "chart notes." The use of "notes" instead of "note" implies that the plan might be a collection of documents, and the requirement that the plan include such dissimilar information as its objective and duration implies the same thing. Even more significantly, the rule states, "The treatment plan may be recorded in *any legible format* including, but not limited to, signed chart notes." (Emphasis added.) The director could plausibly interpret the phrase "any legible format" to include plans submitted piecemeal so long as, taken together, the various pieces meet the other requirements.

The director's reading of *former* OAR 436-010-0230(3)(a) is also consistent with other subsections of the rule. *Former* OAR 436-010-0230 provides, in part, that

"(1)  Medical services * * * provided to the injured worker shall not be more than the nature of the compensable injury or the process of recovery requires.

---

[2] SAIF earlier had agreed to pay for care claimant received before March 3, 2000.

"* * * * *

"(2)   Insurers have the right to require evidence of the frequency, extent and efficacy of treatment."

That a treatment plan is submitted piecemeal does not interfere with the insurer's ability to determine whether medical services are appropriate or with its right to require information about a claimant's treatment. At most, this interpretation might make it marginally less convenient for an insurer to examine the documents submitted by a claimant's physician.

The director's interpretation is also consistent with the purpose of administrative rules governing the provision of medical services to claimants. OAR 436-010-0002 states that "[t]he purpose of these rules is to establish uniform guidelines for administering the payment for medical services to injured workers within the workers' compensation system." Allowing a claimant's physician to submit the components of a treatment plan in more than one document does not interfere with the uniformity sought in the rules. Claimants are still required to have a treatment plan; the director's interpretation merely allows greater flexibility in meeting the requirements of the rule.

The statutory authority for *former* OAR 436-010-0230(3)(a) is found in chapter 656, the Workers' Compensation Law. ORS 656.012 contains the chapter's policy statement:

"(2)   [T]he objectives of the Workers' Compensation Law are declared to be as follows:

"(a)   To provide, regardless of fault, sure, prompt and complete medical treatment for injured workers and fair, adequate and reasonable income benefits to injured workers and their dependents;

"(b)   To provide a fair and just administrative system for delivery of medical and financial benefits to injured workers that reduces litigation and eliminates the adversary nature of the compensation proceedings, to the greatest extent practicable;

> "(c)  To restore the injured worker physically and eco-
> nomically to a self-sufficient status in an expeditious man-
> ner and to the greatest extent practicable[.]"

Once again, nothing in the director's interpretation of the
rule is inconsistent with the goals of compensating and car-
ing for injured workers within a fairly and expeditiously
administered system.

Finally, the director's interpretation of the rule is
plausible in light of ORS 656.252:

> "(1)  In order to ensure the prompt and correct report-
> ing and payment of compensation in compensable injuries,
> the [director] shall make rules governing * * * reports by
> attending and consulting physicians and other personnel of
> all medical information relevant to the determination of a
> claim * * *. Such rules shall include, but not necessarily be
> limited to:
>
> "* * * * *
>
> "(b)  Requiring physicians to submit follow-up reports
> within specified time limits or upon the request of an inter-
> ested party.
>
> "(c)  Requiring examining physicians to submit their
> reports, and to whom, within a specified time.
>
> "(d)  Such other reporting requirements as the director
> may deem necessary to insure that payments of compensa-
> tion be prompt and that all interested parties be given
> information necessary to the prompt determination of
> claims."

The director's interpretation does not make changes to, or
interfere with, a physician's duties to report under the stat-
ute. Rather, it only makes the process of fulfilling those
duties more flexible.

The statement in *Aetna Casualty & Surety Co.*, 139
Or App at 287, admonishing that the terms of *former* OAR
436-010-0230(3)(a) cannot be ignored, is not relevant here; in
that case, the claimant's treating physician submitted no
written plan at all because he was unaware of the require-
ment. Our holding addressed the issue whether good faith
ignorance of the rule excused failure to comply; we did not
address the issue that this case presents, *i.e.*, whether the

term "any legible format" is expansive enough to include piecemeal submissions.

Thus, we disagree with SAIF's contention that "[t]he plan must be a legible writing—complete unto itself—that the chiropractor shepherds through the process mandated by the rule. The director, as a factfinder in a contested case, cannot cobble together—from various statements in the record— evidence that could constitute the required elements of a chiropractic treatment plan." The director interpreted the agency's rules to permit such a process, and that interpretation is not implausible. Here, Lindow signed a letter to SAIF stating that he approved "continued chiropractic treatments for [claimant], on an every-2-weeks basis, as outlined by his chiropractor, Dr. Watts." At the time, both Lindow and SAIF had correspondence from Watts specifying the objective, modalities, frequency, and duration of claimant's treatment. Under the director's interpretation, which we have no basis to reject, Lindow's letter incorporating and approving the existing information meets the requirement of *former* OAR 436-010-0230(3)(a).

Affirmed.