OPINION OF THE COURT
Charles J. Markey, J.
The legal issue of first impression raised by this case is whether a plaintiff-assignee medical equipment supplier can recover no-fault first-party benefits where the prescription for such supplies was written by a chiropractor, and not a physician.
*182 On May 16, 1999, Velez was injured in an automobile accident.[1] The next day, Velez consulted with Kenneth Pieratti, Doctor of Chiropractic, of Monument Chiropractic, PC. Dr. Pieratti prescribed a thermophore (heat treatment to alleviate pain and spasms), a lumbar support (to alleviate pain and prevent compression on nerve roots), a cervical pillow (for proper positioning), a massager (for mechanical massage), a transcutaneous electro-nerve stimulator (TENS) unit (to prevent the transmission of pain nerve impulses), ordered with four leads for larger area stimulation, conductive garment (needed for TENS delivery for larger area stimulation), solid seat insert (for better positioning of the lumbar area), and an ice cap or collar (to alleviate swelling). The chiropractor completed a “Physician Statement of Medical Necessity” and signed a separate “Letter of Medical Necessity.”
Defendant GEICO General Insurance Company moves for summary judgment to dismiss the complaint, arguing that plaintiff-assignee ABC Medical Management, Inc. cannot maintain this action to recover no-fault first-party benefits for various items of equipment it furnished to its assignor Narmy Velez, since the prescription for such supplies was written by a chiropractor, and not a physician.
First, as an initial matter, although defense counsel states that she has attached copies of the pleadings, a review of the pertinent exhibit shows that only the answer is attached. CPLR 3212 (b) states that a copy of the pleadings must be attached as a prerequisite to a proper summary judgment motion. The cases in each department of the Appellate Division state that the failure to attach all the pleadings is sufficient grounds for denying the summary judgment motion, permitting leave to renew it (see, Welton v Drobnicki, 298 AD2d 757 [3d Dept 2002]; Gallagher v TDS Telecom, 280 AD2d 991 [4th Dept 2001]; A & L Scientific Corp. v Latmore, 265 AD2d 355 [2d Dept 1999]; Deer Park Assoc. v Robbins Store, 243 AD2d 443 [2d Dept 1997]; Krasner v Transcontinental Equities, 64 AD2d 551 [1st Dept 1978]; accord Noetzell v Park Ave. Hall Hous. Dev. Fund Corp., 271 AD2d 231, 232 [1st Dept 2000]).
Although the foregoing authorities would be sufficient to deny GEICO’s motion, this court would be obliged to grant leave to *183 renew which would only further congest the huge daily Special Term calendars, clogged by motions involving no-fault first-party benefits (see discussion in Zlatnick v GEICO, 2 Misc 3d 347 [Civ Ct, Queens County 2003]; Universal Acupuncture Pain Servs. v Lumbermens Mut. Cas. Co., 195 Misc 2d 352 [Civ Ct, Queens County 2003]). Rather than burden a colleague judge, for the sake of judicial economy, the court will address the heart of the defendant’s motion.
The substance of GEICO’s summary judgment motion is the defense contention that Education Law § 6551 prohibits a chiropractor from prescribing the aforementioned medical supplies and equipment. Education Law § 6551 (3), in pertinent part, states: “A license to practice chiropractic shall not permit the holder thereof ... to prescribe, administer, dispense or use in his practice drugs or medicines . . . or to utilize electrical devices except those devices approved by the board as being appropriate to the practice of chiropractic.”
First, for purposes of this motion, the court will assume arguendo that section 6551 can be used by insurers to defeat recovery in a no-fault case — although the legal issue is not entirely free of doubt, has not been raised by counsel, and is not decided herein (see, State Farm Mut. Auto. Ins. Co. v Mallela, 2002 WL 31946762, *4, 2002 US Dist LEXIS 25187, *16-18 [ED NY 2002, Sifton, J.] [rejecting insurer’s view that a provision of New York’s Business Corporation Law intended to create a right to deny payment of no-fault benefit fees]; Matter of Pugliese v Hamburg, 223 AD2d 383 [1st Dept 1996]).
In King’s Med. Supply v Travelers Prop. Cas. Corp. (194 Misc 2d 667 [Civ Ct, Kings County 2003]), a thoughtful and seminal opinion discussing the prima facie burden of a medical supplier seeking to recover no-fault first-party benefits, the equipment at issue was virtually identical to that litigated herein. In King’s Med., the insurer simply contested the cost of a cervical pillow, lumbosacral support, thermophore, lumbar cushion, a 4-lead TENS, a cold pack, whirlpool, TENS unit, and a TENS belt (id. at 667-670). The court there observed: “[T]here is nothing unique about this equipment” (id. at 672).
This court’s independent legal research discloses that GEICO’s argument has been advanced by insurers and rejected, in principal part, by courts of other jurisdictions. In Haezebrouck v State Farm Mut. Auto. Ins. Co. (216 Ga App 809, 455 SE2d 842 [1995]), the appellate court reversed, in part, the lower court and held that a chiropractor could properly prescribe a TENS *184 unit, a Lossing back and neck traction unit, a cervical collar, a cervical pillow, and knee support (216 Ga App at 810, 455 SE2d at 844). The court there noted that a statutory change permitted chiropractors to utilize hot and cold packs (id.; see also, SAIF Corp. v Ross, 191 Or App 212, 216, 82 P3d 1035, 1036 [2003] [approving chiropractor’s use of modalities of ice and warm compress]).
In Hofmann v Auto Club Ins. Assn. (211 Mich App 55, 535 NW2d 529 [1995], lv denied 452 Mich 870, 552 NW2d 170 [1996], reconsideration denied 452 Mich 870, 554 NW2d 313 [1996]), the court held that chiropractors were authorized to utilize cervical collars (to support and immobilize the spine), cervical pillows (to rehabilitate ligaments and musculature of the cervical spine), lumbar belts (to relieve the strain on the lumbar muscles and spine), and lumbar supports (to restore the normal curvature of the lumbar spine) (211 Mich App at 76-79, 535 NW2d at 541-542). The court in Hofmann, however, held that heat and cold were not included within the scope of chiropractic practice.
Cases in New York suggest that chiropractors may utilize thermophore and heat or cold therapy (see, Introna v Allstate Ins. Co., 850 F Supp 161, 165 [ED NY 1993] [“application of hot/cold packs . . . are neither ‘unusual’ nor ‘unique’ chiropractic services”]; see, e.g., Jimenez v Supermarket Serv. Corp., 2002 WL 662135, 2002 US Dist LEXIS 7029 [SD NY 2002]; Stanton v Hexam Gardens Constr. Co., 144 AD2d 132, 133 [3d Dept 1988]; see also, Everett v State Farm Indem. Co., 358 NJ Super 400, 402, 818 A2d 372, 373 [2002] [per curiam] [chiropractor may properly prescribe and recover “for a thermophore electric pad, commonly referred to as a heating pad, to relieve” strains and sprains], affd substantially on op below 175 NJ 567, 818 A2d 319 [2003] [per curiam] [5-2 decision]; see generally, King’s Med. Supply v Travelers Prop. Cas. Corp., 194 Misc 2d at 668, 672 [although not stating who prescribed the thermophore and other supplies, such equipment was not unique]).
This court holds that a chiropractor may prescribe TENS units, thermophore devices, cervical collars, cervical pillows, lumbar supports, massagers, ice packs, and similar supplies and equipment and that they do not constitute “drugs or medicines” within the meaning of the Education Law.
Further buttressing this court’s conclusion, although not cited by the parties, is the language of 11 NYCRR part 68, Appendix 17-C, part E (b) (1), stating: “For medical equipment and supplies (e.g., TENS units, soft cervical collars) provided by a physi *185 cian or medical equipment supplier, the maximum permissible charge is 150 percent of the documented cost of the equipment to the provider.”
First, the above section provides essentially a fee schedule for equipment given by a physician or a medical equipment supplier. The plaintiff here, ABC, is a medical equipment supplier, and it provided the supplies to its assignor Velez. Dr. Pieratti, the chiropractor, did not furnish the supplies, and it is not the chiropractor who is seeking recovery for the supplies. Nothing in the foregoing regulation prohibits a chiropractor from prescribing the aforementioned supplies, to be dispensed by either a physician or a medical equipment supplier.
More important, the above-quoted provision of part E specifically lists “TENS units [and] soft cervical collars” as typical examples, denoted by the “e.g.” reference, of medical equipment and supplies.
This court has examined the cases cited by GEICO, and other cases, prohibiting chiropractors from performing electrotherapy (e.g., State v Wilson, 11 Wash App 916, 917, 528 P2d 279, 280 [1974], review denied 84 Wash 2d 1015, 528 P2d 279 [1974]; State v Boston, 226 Iowa 429, 278 NW 291 [1938]). These cases on electrotherapy are inapposite to the prescription of the unremarkable medical equipment prescribed herein. This court, at any rate, also notes that, under the terms of Education Law § 6551 (3), quoted above, New York permits chiropractors to utilize certain electrical devices that may be approved by the State Board for Chiropractors, and the 4-lead TENS unit at issue here is permissible.
The Insurance Law regulations specifically incorporate the fee schedules of the Workers’ Compensation Law (11 NYCRR 65.15 [o] [1]). The court has also reviewed, although not cited by either party, the Official New York Workers’ Compensation Chiropractic Fee Schedule (fee schedule), effective April 1, 2000 (see, 12 NYCRR 348.2 [a] [that provision of the Labor Law regulations specifically incorporates by reference the fee schedule]; 12 NYCRR 348.1, 348.2). The fee schedule specifically permits New York chiropractors to bill for electromyographic recordings, needle electromyography (EMG) tests, nerve conduction, and a host of other services.[2]
Pertaining to medical equipment and supplies, the fee schedule, in its “General Ground Rules,” states:
*186 “3. MATERIALS SUPPLIED BY A CHIROPRACTOR
“Supplies and materials provided by the chiropractor over and above those usually included with the office visit or other services rendered may be charged for separately. List drugs, trays, supplies and materials provided. Payment shall not exceed the invoice cost of the item(s), applicable taxes and any shipping and handling costs associated with delivery from the supplier of the item to the chiropractor’s office. There should be no additional ‘handling’ costs added to the total cost of the item. Bill using procedure code 99070.”
Since the fee schedule does not permit chiropractors to bill for a medical supply beyond the invoice cost, chiropractors apparently have little motivation to provide directly to the patient the needed equipment. Instead, the simple act of writing a prescription for the device by the chiropractor is more time-efficient for the chiropractor and more profitable for a medical supplier, under the aforementioned Insurance Law regulations that permit a charge of “150 percent of the documented cost of the equipment to the provider” (11 NYCRR part 68, Appendix 17-C, part E [b] [1]).
In moving for summary judgment, GEICO counsel used the following caption, which appeared in boldface type and underlined in its motion papers: “plaintiff has failed to prove medical need.” Despite the caption, suggesting that a discussion of its medical necessity defense would follow, GEICO did not develop the defense of medical necessity, did not include the peer review report cited in its answer, and restricted its argument to Dr. Pieratti’s alleged violation of Education Law § 6551 (3).
The cases are clear that in moving for summary judgment on the grounds of medical necessity, the burden is on the insurer to make a prima facie case by including the peer review report.
*187 Failure to include it warrants denial of the summary judgment motion (see, S & M Supply v Allstate Ins. Co., 2003 NY Slip Op 51191[U] [App Term, 2d Dept 2003] [peer review report would have been proper vehicle to assert and maintain defense of lack of medical necessity]; L.I. First Aid Med. Supply v Progressive Cas. Ins. Co., 196 Misc 2d 258 [Civ Ct, Queens County 2003]; S & M Supply v New York Cent. Mut. Fire Ins. Co., 193 Misc 2d 282, 284 [Civ Ct, Kings County 2002]). In the present case, it was plaintiff’s counsel, in opposition to the motion, who produced the peer review report. This court, accordingly, will discuss the alleged defense.
Louis Filardi, also a doctor of chiropractic and author of the peer review report, challenges Dr. Pieratti for prescribing all of the aforementioned medical equipment and supplies only one day after the accident. Citing Clinical Practice Guidelines No. 14, published by the United States Department of Health and Human Services, Dr. Filardi states that 80%-90% of all individuals who complain of soft tissue injury have a resolution of their complaints in one month of the accident. He, therefore, expresses his astonishment for the necessity of prescribing “all of these durable medical goods” within 24 hours after the accident.
In the present case, the prescription, regardless of when it was written, may have been justified in light of the patient’s overall condition, not clearly disclosed on this record. The trier of fact ought to determine these contested issues. Accordingly, the defendant’s motion for summary judgment is, in all respects, denied.

. The peer review report submitted by GEICO maintains that the accident occurred on May 16, 1999. However, twice in Dr. Pieratti’s “Letter of Medical Necessity” the date of the accident is said to be April 16, 1999. Upon request by this court for confirmation, plaintiffs counsel sent a fax disclosing that the accident was, indeed, on May 16, 1999.

. Under New York law, chiropractors may recover no-fault first-party benefits for conducting EMGs (see, Introna v Allstate Ins. Co., 890 F Supp 161, *186 165 [ED NY 1995]; Stephens v Allstate Ins. Co., 185 AD2d 338 [2d Dept 1992]; Studin v Allstate Ins. Co., 152 Misc 2d 221, 223-224 [Dist Ct, Suffolk County 1991] [chiropractors can recover for performing EMGs, citing Education Law § 6551 (3) and 8 NYCRR 73.3]; 12 Couch on Insurance 3d § 171:68 [1998] [chiropractor entitled to compensation for conducting surface EMGs]; see also, Posillico v Freeman, NYLJ, June 18, 1996, at 33, col 6 [Yonkers City Ct, Westchester County] [insurer did not contest chiropractor’s claim for electrical stimulation]; but cf. Downey v Barnhart, 294 F Supp 2d 495, 498, n 3 [SD NY 2003] [chiropractor was not an acceptable source for providing a medical interpretation of the EMG]; Machac v Anderson, 261 AD2d 811, 813 [3d Dept 1999] [chiropractor not licensed to interpret X rays]).